487 A.2d 7

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Helen McKEIRNAN, Robert Michael McKeirnan, Michael Francis McKeirnan, Gary Francis McKeirnan, Ross William McKeirnan, Appellees.**

Superior Court of Pennsylvania.

Argued May 8, 1984.

Filed Jan. 4, 1985.

404

Russell F. Daiello, District Attorney, Coudersport, for Commonwealth, appellant.

Joseph J. Malizia, Emporium, for appellees.

Before WICKERSHAM, WIEAND and LIPEZ, JJ.

WIEAND, Judge:

The Commonwealth has appealed from an order suppressing all evidence and quashing informations which charged members of the McKeirnan family with assaulting and otherwise hindering members of the State Police in the performance of their duties. The only reason given for this order by the trial court was that the State Police had been illegally present upon McKeirnan land at the time of the alleged assault. We reverse and remand for further proceedings.

Although there is considerable dispute about the events which occurred on the evening of August 7, 1982, we accept as true and binding the facts found by the court below. However, we are not bound by the court's conclusions of law. See: *Commonwealth v. Hamlin*, 503 Pa. 210, 215, 469 A.2d 137, 139 (1983); *Commonwealth v. Markman*, 320 Pa.Super. 304, 308, 467 A.2d 336, 338 (1983).

The facts found by the trial court disclose that at or about 6:15 p.m., Trooper Sam Breniman was investigating a shooting incident on Sizerville Road in Shippin Township, Cameron County. His investigation caused him to stop at the homes of several local residents to make inquiry. He arrived at the McKeirnan home about 8:30 p.m. Here, the residence was set back from the road, and access thereto

could be acquired only by using a privately owned bridge to cross an intervening creek. The McKeirnan family had celebrated a wedding reception at their home during the afternoon, and that evening family members were gathered around an outdoor pool. Breniman arrived in uniform but driving an unmarked car. When Mr. and Mrs. McKeirnan approached to ask the purpose of his visit, Breniman steadfastly refused to answer repeated inquiries. The McKeirnans then asked Breniman to leave, but he refused. He said he wanted to speak with Robert McKeirnan.[1] Robert was standing nearby and, in an effort to get the trooper's attention, grabbed Breniman's tie and pulled it off. Breniman told Robert that he was under arrest for destroying Commonwealth property. A scuffle then ensued during which several members of the family attempted to escort Breniman to his car. Blows were struck, and Breniman told Robert and Ross McKeirnan that they were under arrest for assault. Believing he would not be able alone to effect an immediate arrest, Breniman returned to his barracks to obtain assistance. Accompanied by Corporal Paul Mottershead and Patrolman David Shinskie, Breniman then returned to the McKeirnan residence. There, another scuffle broke out, during which Ross McKeirnan was struck on the head with nightsticks and seriously injured. Subsequently arrested, in addition to Ross McKeirnan, were his brothers, Robert and Gary, and his parents, Helen and Robert Michael McKeirnan. They were variously charged with committing assault offenses and obstructing police officers in violation of 18 Pa.C.S. § 5101.

Separate omnibus pre-trial motions were filed in which appellees requested, inter alia, that all evidence be suppressed and the charges dismissed because of illegal entries made by police upon McKeirnan land. The court treated the motions to dismiss as motions to quash and quashed the informations. The court also suppressed the testimony of the three state troopers.

The quashing of the informations was improper.

---

1. Breniman had arrested Robert McKeirnan several months earlier for driving while under the influence of alcohol.

A motion to quash may be used to raise defects apparent on the face of the information or other defects that would prohibit prosecution.... A motion to quash an information is neither a guilt determining procedure nor a pre-trial means for determining the sufficiency of the Commonwealth's evidence.... *The inadequacy, incompetency, or even illegality of the Commonwealth's evidence does not constitute grounds for quashing an information.*

*Commonwealth v. Meoli,* 307 Pa.Super. 50, 52–53, 452 A.2d 1032, 1033–1034 (1982) (citations omitted) (emphasis added). See: *Commonwealth v. Moser,* 328 Pa.Super. 237, 240, 476 A.2d 980, 981 (1984); *Commonwealth v. Gemelli,* 326 Pa. Super. 388, 402, 474 A.2d 294, 301 (1984).

■ It is well settled that an illegal arrest does not bar a subsequent prosecution or prevent a valid conviction. *United States v. Crews,* 445 U.S. 463, 474, 100 S.Ct. 1244, 1251, 63 L.Ed.2d 537, 547 (1980); *Gerstein v. Pugh,* 420 U.S. 103, 119, 95 S.Ct. 854, 865, 43 L.Ed.2d 54, 68 (1975); *Commonwealth v. Sudler,* 496 Pa. 295, 304, 436 A.2d 1376, 1380 (1981); *Commonwealth v. Krall,* 452 Pa. 215, 219, 304 A.2d 488, 490 (1973); *Commonwealth v. Meoli, supra* 307 Pa.Super. at 54, 452 A.2d at 1034; *Commonwealth v. Bable,* 286 Pa.Super. 203, 206, 428 A.2d 643, 644 (1981); *Commonwealth v. Kazior,* 269 Pa.Super. 518, 521, 410 A.2d 822, 823 (1979). The court's belief that the state troopers had violated appellees' Fourth Amendment rights was not a proper basis on which to quash the informations. The remedy for an illegal arrest is the suppression of the evidence illegally obtained thereby. However, a court cannot quash an information merely because the court believes that some or all of the Commonwealth's evidence has been obtained illegally. See, e.g.: *United States v. Calandra,* 414 U.S. 338, 344–345, 94 S.Ct. 613, 618, 38 L.Ed.2d 561, 569 (1974) (pertaining to grand jury indictments); *United States v. Goldman,* 439 F.Supp. 337, 348 (S.D.N.Y.1977); *United States v. Grosso,* 225 F.Supp. 161, 175 (W.D.Pa.1964); *United States v. Sawyer,* 213 F.Supp. 38, 42 (E.D.Pa.1963). Similarly, a court cannot properly quash a criminal informa-

tion merely because it believes the accused has been improperly charged or has a defense to the crime with which he has been charged. *Commonwealth v. Meoli, supra.*

In this case, the suppression of testimony of the state policemen was also error. Trooper Breniman, in the investigation of a possible shooting, could properly enter upon the McKeirnan land to make inquiry. See: *Commonwealth v. Shannon*, 320 Pa.Super. 552, 467 A.2d 850 (1983). Accord: *Causey v. State*, 374 So.2d 406 (Ala.Crim.App. 1979); *Younger v. State*, 433 So.2d 636 (Fla.Dist.Ct.App. 1983); *Gilreath v. State*, 247 Ga. 814, 279 S.E.2d 650 (1981), *cert. denied*, 456 U.S. 984, 102 S.Ct. 2258, 72 L.Ed.2d 862 (1982); *State v. Rand*, 430 A.2d 808 (Me.1981); *State v. Corbett*, 15 Or.App. 470, 516 P.2d 487 (1973); *State v. Seagull*, 95 Wash.2d 898, 632 P.2d 44 (1981); *State v. Aydelotte*, 35 Wash.App. 125, 665 P.2d 443 (1983). The trial court recognized that Trooper Breniman possessed limited authority to approach members of the McKeirnan family to inquire about the shooting but held that the trooper's presence was rendered illegal by his refusal to state his purpose or leave the premises upon request. The court concluded from this that Breniman had lacked probable cause to make an arrest and that his subsequent return, with assistance, for that purpose had also been illegal.[2]

The law is clear, however, that even an unlawful arrest does not excuse an assault upon an arresting police officer. See: 18 Pa.C.S. § 505(b)(1)(i). See also: *Commonwealth v. Meoli, supra* 307 Pa.Super. at 55, 452 A.2d at 1035; *Commonwealth v. Temple*, 258 Pa.Super. 269, 275, 392 A.2d 788, 791 (1978). In *Commonwealth v. Whitner,*

2. A person's reasonable expectation of privacy may extend to the curtilage surrounding his premises. *Commonwealth v. Shannon*, 320 Pa.Super. 552, 555, 467 A.2d 850, 852 (1983). Accord: *Wattenburg v. United States*, 388 F.2d 853, 857 (9th Cir.1968). Courts in other jurisdictions which have considered whether a property owner has a reasonable expectation of privacy in his driveway or access road have concluded that such an area is "semiprivate." See: *United States v. Ventling*, 678 F.2d 63 (8th Cir.1982); *United States v. Magana*, 512 F.2d 1169 (9th Cir.1975); *State v. Corbett*, 15 Or.App. 470, 516 P.2d 487 (1973); W. LaFave, 1 *Search and Seizure* § 2.3(f) (1978).

241 Pa.Super. 316, 361 A.2d 414 (1976) (en banc), a police officer had stopped the defendant and was conducting a patdown search of his person when the defendant unexpectedly struck the officer with a suitcase which he had been carrying and fled. The Superior Court held that "regardless of whether [the police officer] was justified in stopping Whitner and searching him for weapons, Whitner committed a crime when he struck the officer with the suitcase." *Id.*, 241 Pa.Superior Ct. at 322, 361 A.2d at 417–418. Thus in the instant case, even if the attempt by state policemen to make an arrest had been unlawful, the persons being arrested could be prosecuted for assault offenses committed thereafter.

▇ It follows, then, that evidence of the assault could not properly be suppressed. The testimony of the officers that the McKeirnans had assaulted them following their attempt to make an arrest could not be suppressed merely because the court believed the attempted arrest to be illegal. Any other rule would be an absurdity. Under a contrary rule, although an assault upon a police officer could not be justified by the policeman's attempt to make an unlawful arrest, the Commonwealth would be precluded from proving the assault because its evidence would be subject to suppression. The effect of suppression would be to prevent prosecution for the assault. Such a rule would render ineffective a major portion of the Pennsylvania Crimes Code intended to protect law enforcement officers. It would have the effect of jeopardizing the safety of police officers by placing them at the mercy of any person, criminal or noncriminal, who believed he was being arrested unlawfully.

▇ A purpose of the exclusionary rule, it is true, is to deter unlawful police conduct by disallowing the use of evidence obtained pursuant to an illegal arrest. See: *United States v. Leon*, ── U.S. ──, ──, 104 S.Ct. 3405, 3415, 82 L.Ed.2d 677, 687–688 (1984); *Michigan v. DeFillippo*, 443 U.S. 31, 38 n. 3, 99 S.Ct. 2627, 2633 n. 3, 61 L.Ed.2d 343, 350 n. 3 (1979); *Commonwealth v. Brown*, 470 Pa. 274, 282, 368

A.2d 626, 630 (1976); *Commonwealth v. Youngblood*, 241 Pa.Super. 72, 78, 359 A.2d 456, 459 (1976). The rule does not apply, however, to seal the lips of law enforcement officers with respect to crimes committed in their presence during or following an arrest. They may testify to criminal conduct committed in their presence while making an arrest even though the arrest is subsequently determined to be unlawful.

Reversed and remanded for proceedings consistent with the foregoing opinion. Jurisdiction is not retained.