621 A.2d 669

**In the Interest of BARRY W.**

**Appeal of BARRY W.**

Superior Court of Pennsylvania.

Argued Sept. 9, 1992.

Filed March 2, 1993.

550

Steven C. Scarpa, Philadelphia, for appellant.

John K. McDonald, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before ROWLEY, President Judge, and CAVANAUGH, McEWEN, DEL SOLE, BECK, TAMILIA, KELLY, POPOVICH and FORD ELLIOTT, JJ.

McEWEN, Judge.

This is an appeal from an order which adjudicated appellant delinquent based upon commission of the offenses of aggravated assault, 18 Pa.C.S. § 2702(a)(3), and resisting arrest, 18 Pa.C.S. § 5104. A divided panel of this Court found the evidence insufficient as to the offense of resisting arrest but affirmed the adjudication of delinquency on the basis of the charges of aggravated assault. This Court, in response to the petition for reargument filed by the Commonwealth and its contention that reargument was imperative in order to "have this Court confine itself to its proper role of appellate review of sufficiency of the evidence claims", granted *en banc* review. We have engaged, pursuant to our prescribed standard of review, in a thorough review of the record and the applicable law, and again find the evidence insufficient to sustain the conviction for resisting arrest [1], but affirm the order adjudicating appellant delinquent based upon the aggravated assault charges.

---

1. As set forth more fully hereinafter, we reject as meritless the challenge to the sufficiency of the evidence as to the charges of aggravated assault.

The opinion of the distinguished Judge Frank X. O'Brien provides an accurate summary of the evidence presented by the Commonwealth at trial:[2]

On September 4, 1990, the defendant, Barry W., (d.o.b. 8/24/72) was tried and found guilty of aggravated assault, simple assault, and resisting arrest and adjudged delinquent. A post-trial motion for a new trial on grounds that there was insufficient evidence to show intent or knowledge under 18 Pa.C.S. § 2702(a)(3) (aggravated assault) or prohibited conduct under 18 Pa.C.S. § 5104 (resisting arrest) was denied on October 2, 1990.

Testimony at trial indicated that on August 6, 1990, at approximately 10:05 p.m., police officer David Ashby, while in a marked police vehicle with a partner, received a radio call: "Investigating (sic) male selling narcotics" at a specific location. Officer Ashby, in uniform, observed two (2) males standing on a corner at the designated location. He approached the two (2) males and said: "stop police". The two (2) males, one being the defendant, began to run. Officer Ashby pursued the defendant in the belief that the latter was selling drugs and observed the defendant throw an object to another person which the officer believed was narcotics. Officer Ashby pursued on foot and his partner followed in the police vehicle. At that point, Officer Ashby and his partner were joined by uniformed police officers Mays and Borans.

Officer Ashby attempted to arrest and "cuff" the defendant while Officer Delores Borans tried to hold defendant. At some point the defendant turned and struck Officer Borans. In the continuing struggle defendant then pushed Officer Borans with the flat of his hand into a truck parked a couple of feet away. As a result of the push Officer Borans fell against the rear of the truck and cut her hand on a broken window.

2. The Commonwealth presented the testimony of Officer Ashby and Officer Borans. Officer Ashby was the officer who initiated the chase, and Officer Borans was the female officer who was injured when she fell against the truck while attempting to assist the arresting officers.

Appellant first argues that the evidence is insufficient to establish the essential elements of the offense of resisting arrest, 18 Pa.C.S. § 5104, or aggravated assault, 18 Pa.C.S. § 2702(a)(3) since the Commonwealth's evidence failed to establish that there had been a lawful arrest or that the arresting officer was "discharging any other public duty". While we find the evidence sufficient as to the offense of aggravated assault, we find it insufficient to establish one of the essential elements of the offense of resisting arrest, specifically, that the arrest itself was lawful.

■ Our scope of review in an appeal involving a challenge to the sufficiency of the evidence is well-settled:

> The test for the sufficiency of the evidence in a criminal case is whether the evidence is sufficient to prove every element of the crime beyond a reasonable doubt. *See: Commonwealth v. Harper,* 485 Pa. 572, 403 A.2d 536 (1979). In making this determination, the reviewing court must view the evidence in the light most favorable to the Commonwealth as the verdict winner, and accept as true all evidence and all reasonable inferences therefrom upon which, if believed, the fact finder properly could have based its verdict. *Commonwealth v. Davis,* 491 Pa. 363, 421 A.2d 179 (1980).

*Commonwealth v. Hughes,* 521 Pa. 423, 438, 555 A.2d 1264, 1267 (1989). *Accord: Commonwealth v. Thomas,* 522 Pa. 256, 262–64, 561 A.2d 699, 702 (1989); *Commonwealth v. Hardcastle,* 519 Pa. 236, 244–46, 546 A.2d 1101, 1105 (1992); *Commonwealth v. Gaynor,* 417 Pa.Super. 417, 419–21, 612 A.2d 1010, 1011 (1992); *Commonwealth v. Sample,* 270 Pa.Super. 47, 49–51, 410 A.2d 889, 891 (1979).

The Commonwealth, in its brief, characterizes the evidence produced at trial as follows:

> The Commonwealth's evidence in this case clearly met that standard. The officers here received a radio call of a male selling narcotics at a corner only three blocks from their location. A few minutes later, they pulled up in their marked patrol car and saw two males standing at the very corner named in the radio call. One of the uniformed

officers exited the car to investigate. At that moment, the two males, who were under a shelter, immediately fled into the driving rain. The officer ordered them to stop, but they continued to run from him. In flight, defendant tossed an object, which the officer believed to be drugs, to his cohort. The officer chased defendant and, after a struggle, subdued and handcuffed him.

 While we agree with the Commonwealth that we are not free to substitute our view of the evidence for the factual findings of the trial court, the issue presented by the sufficiency challenge in this case involves the legal conclusion to be drawn from the facts found by the trial court. We as an appellate court are authorized, indeed required, to utilize a plenary scope of review in determining the validity of the *legal* conclusions made by the trial court.

The determination of whether probable cause or reasonable suspicion of criminal activity exists is a legal conclusion to be drawn from the facts as found by the suppression court. *See Beck v. Ohio,* 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964).

*Commonwealth v. Stubblefield,* 413 Pa.Super. 429, 435, 605 A.2d 799, 802 (1992).

Thus, utilizing *only* the evidence presented by the Commonwealth [3], this Court must determine whether *that* evidence was

**3.** Officer Ashby testified as follows:
BY MR. RILEY:
Q. What was the information received?
A. Investigating male selling narcotics.
Q. Where is that?
A. 61st and Lansdowne.
Q. Did you go to 61st and Lansdowne?
A. Yes, that's correct.
Q. What if anything did you observe?
A. I observed two males standing on the corner 61st and Lansdowne as I approached they start running.
Q. Is one of them here?
A. Young man right here.
Q. What if anything did you say to them when you approached them?
A. I said, "Stop police" they start running down the street. It was raining hard. I was chasing behind them down in the middle of the block as radio came out with "Pursuit of one black male" 19–Tom–#, with Officer Mays and Officer Borans of the 19th District, we start

closing in on their vehicle. They came up on the pursuit. As we met we got hold of him in front of the truck, he started to tussle.

Q. You say started to tussle? Who got ahold of him?

A. I got hold of him. I was trying to cuff him. Officer Borans was trying to hold him down. He swung around hit her the first time.

Q. Where was she standing when he struck her?

A. She was behind him. Second time he turned around toward her pushed her toward the truck.

Q. What happened to the officer?

A. She cut her hand on something on the truck.

Q. Now, did you in fact succeed in apprehending the defendant?

A. Yes. I didn't cuff him, my partner cuffed him. I was holding him down.

Q. Officer, for what if any purpose did you chase the defendant? Why did you begin to chase the defendant?

A. Because he started to run. He threw an object in the air as he was running.

\* \* \* \* \* \*

Q. What if anything did you believe was going on when you got there?

A. I believe they were selling drugs.

\* \* \* \* \* \*

BY MR. BANK:

Q. When you arrived on the scene, after you got the radio call, how much time afterward was it?

A. About two or three minutes.

Q. Where were you when you got the radio call?

A. 64th and Lansdowne.

Q. You went from 64th Street down Lansdowne Avenue?

A. That's correct.

Q. It was raining hard?

A. Real hard.

Q. Dark night?

A. Yes, it was.

Q. When you arrived there at 61st Street and saw these two males they were just standing there?

A. Yes. Under ledge or roof.

Q. Standing over a ledge?

A. Yes.

Q. Did you proceed to exit the vehicle?

A. As I exited they ran.

Q. Both ran?

A. Yes.

\* \* \* \* \* \*

Q. From the time you saw the two young men under the ledge until you caught him, how long a distance was it?

A. Three-quarters of the block.

Q. Three-quarters of a block?

A. Yes.

Q. Your partner was chasing him, too?

A. Driving the vehicle behind him.

Q. When you caught him three-quarters of the way down the block that was still on 61st Street or Lansdowne?

sufficient to establish each of the elements of the offense of resisting arrest and aggravated assault. *Commonwealth v. Williamson*, 532 Pa. 568, 616 A.2d 980 (1992).

■ Section 5104 of the Crimes Code provides:

A person commits a misdemeanor of the second degree if, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance.

A. On 61st Street.
Q. At that point when you saw him your partner was in a vehicle. Was Officer Borans there?
A. Yes, she was.
Q. You were trying to cuff him when this occurred?
A. Yes.
Q. How were you trying to cuff him?
A. Grab Him. He was tussling. He was sweaty. He was slippery. We were trying to hold him.
Q. Did you have his arms behind him?
A. After everybody got on him we did.

\* \* \* \* \* \*

[OFFICER BORANS:]
Q. When you first arrived on the scene what was occurring?
A. Officer from the other patrol car was in foot pursuit.
Q. Officer Ashby?
A. Yes.
Q. He's been here today. He just testified.
A. Officer Ashby and his partner.
Q. Did you in fact arrive when Officer Ashby was exiting his vehicle?
A. The Officer went to approach the male.
Q. You saw the Officer approach the male before he ran; is that correct?
A. When he went over to the male, the male fled from him.
Q. You saw that?
A. Yes.
Q. Where was that?
A. They were going north on 61st and Lansdowne.
Q. Where did the incident occur? Where were you with cuffs and where was the van with the broken window parked?
A. On 61st Street.
Q. When Officer Ashby approached the males did you see them do anything beside run?
A. I don't recall.

18 Pa.C.S. § 5104. The eminent Justice Frank J. Montemuro, Jr., while still our colleague, clarified the essential elements of the offense of resisting arrest when he opined:

> The provisions of 18 Pa.C.S. § 5104 are clearly disjunctive. To be convicted under the first provision of § 5104, it is essential that there be a lawful arrest. *See Commonwealth v. Eberhardt,* 304 Pa.Super. 222, 450 A.2d 651 (1982); *Commonwealth v. Whitner,* 241 Pa.Super. 316, 361 A.2d 414 (1976); *Commonwealth v. Bartman,* 240 Pa.Super. 495, 367 A.2d 1121 (1976); *Commonwealth v. Stortecky,* 238 Pa.Super. 117, 352 A.2d 491 (1975). In this case there is no evidence to show that the arrest underlying the resisting arrest charge was lawful. In fact both parties and the trial court agree that the York police officers did not have the authority to make a lawful arrest for "hit and run"—that is, leaving the scene of an accident after hitting an attended vehicle—because the incident did not occur in the presence of the officers. Under such circumstances, the appellant could not, as a matter of law, be convicted under the provisions of § 5104 pertaining to lawful arrest.
>
> In light of the foregoing, the latter provision of § 5104, pertaining to "discharging any other public duty" besides effecting a lawful arrest, must be relied upon. To be convicted under the latter provision of § 5104, it is essential that there be a "discharge of any other duty" within the meaning of the statute. If we accept the argument of the Commonwealth, as did the trial court, the statute would be interpreted to allow every resisting arrest charge to stand whether or not supported by a lawful arrest. The police would undoubtedly argue in every case where there was an unlawful arrest that they were merely discharging a duty by investigating the circumstances surrounding the underlying incident. The grave abuse invited by such an interpretation of the "discharge of any other duty" provision of § 5104 was clearly not contemplated. An indication of what was contemplated is found by turning to Section 242.2 of the Model Penal Code, which § 5104 was modeled after. The Model Penal Code § 242.2 comment 5 (Official Draft and Revised

Comments 1980), which deals with the physical obstruction of discharge of public duty, states:

'Section 242.2 covers physical interference in a host of circumstances in which public servants *discharge legal duties other than arrest*. These include, for example, a policeman executing a search warrant, a fireman putting out a blaze, a forest or agricultural official making required inspections, an election official charged with monitoring balloting, and the like.'

Therefore we hold that the court below should not have sent the issue of resisting arrest to the jury because the evidence was not sufficient to support a verdict of guilty beyond a reasonable doubt.

*Commonwealth v. Karl,* 328 Pa.Super. 97, 102–03, 476 A.2d 908, 911 (1984) (emphasis in original). The rationale of the eminent jurist is just as applicable and compelling here, and so we hold that the Commonwealth is required to establish that the arrest of appellant was lawful in order to establish one of the essential elements of the offense of resisting arrest.

## I. PROBABLE CAUSE

■ The Commonwealth first argues that there was probable cause to arrest appellant when, during the chase, "he took an object that he was carrying and tossed it to his fleeing cohort", citing the opinion of this Court in *Commonwealth v. Chase,* 394 Pa.Super. 168, 575 A.2d 574 (1990) as dispositive of the probable cause issue before us. We find this contention devoid of merit. This Court found probable cause to arrest existed in *Chase* although characterizing the case as a "close one", where an undercover officer *purchased* drugs from the defendant and immediately radioed his uniformed partner, stationed a few blocks away, that "he had just purchased narcotics from a black man wearing a blue shirt in the 1900 block of Orthodox, at the corner of Lackawanna and Orthodox". The uniformed officer, upon arriving at the corner observed the defendant, a black man, dressed in a blue shirt, standing at the aforementioned corner. The officer alighted from his vehicle and announced "Police", whereupon the appel-

lant fled, only to be overtaken by the pursuing officer. In the instant case, there was *no evidence of a contemporaneous drug sale* to anyone much less to an undercover officer. There was no physical description of any kind of the person alleged to be selling drugs by the anonymous tipster. And there is *no description of or reference to the item thrown by appellant to his companion* other than references to an "object" by Officer Ashby. The officer was not asked to describe this object in any way and was not asked if the "object" was large or small, shiny or dull, metallic or cloth, dark or light. Certainly, so bland and undescriptive a reference to an "object", even after attribution of all *reasonable* inferences arising therefrom cannot suffice to establish probable cause for a warrantless arrest.

## II. REASONABLE SUSPICION

■ The Commonwealth argues in the alternative that the forcible stop of appellant was lawful since Officer Ashby, as a result of an anonymous tip to investigate a male selling drugs at the corner of 61st Street, had reasonable suspicion to support an investigatory stop of appellant.

"If [the] police have a reasonable suspicion that criminal activity is afoot, they may make a temporary, investigatory stop even though they lack probable cause to make an arrest". *Commonwealth v. Capers,* 340 Pa.Super. 136, 141, 489 A.2d 879, 881 (1985) (citation omitted). The initial stop of a person is legitimate if the investigating officers "[c]an point to specific and articulable facts which in conjunction with rational inferences deriving therefrom reasonably warrant the intrusion". *Commonwealth v. Prengle* [293 Pa.Super. 64, 68, 437 A.2d 992, 994 (1981) ], *supra.* Such a stop facilitates the acquisition of information useful to the investigating officers:

> *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response.... A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while ob-

taining more information may be most reasonable in light of the facts known to the officer at the time.

*Adams v. Williams,* 407 U.S. 143, 145–46, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972) (citations omitted).

*Commonwealth v. Jackson,* 359 Pa.Super. 433, 437, 519 A.2d 427, 429–430 (1986).

■ However, in order for a *Terry* stop to be constitutionally permissible, a police officer "must rely on *specific* and *articulable* facts which, if taken together with rational inferences from those facts, reasonably warrant a belief that criminal activity is afoot.... *Adams v. Williams,* 407 U.S. 143, 145–46, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612, 616–17 (1972); *Commonwealth v. Smith,* 396 Pa.Super. 6, 577 A.2d 1387, 1389 (1990)." *Commonwealth v. Martinez,* 403 Pa.Super. 125, 127–28, 588 A.2d 513, 514 (1991) (emphasis supplied). *Accord: Commonwealth v. Brown,* 388 Pa.Super. 187, 190, 565 A.2d 177, 178 (1989); *Alabama v. White,* 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d. 301 (1990); *Maryland v. Buie,* 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990); *United States v. Sokolow,* 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989); *U.S. v. Cortez,* 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); and *Brown v. Texas,* 443 U.S. 47, 51, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357 (1979). As this Court recognized in *In re Interest of Jermaine,* 399 Pa.Super. 503, 582 A.2d 1058 (1990), *allo. denied,* 530 Pa. 643, 607 A.2d 253 (1992), the purpose of the Fourth Amendment to the United States Constitution as well as the purpose of Article 1 Section 8 of the Pennsylvania Constitution, is

"to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals." *United States v. Martinez–Fuerte,* 428 U.S. 543, 554, 96 S.Ct. 3074, 3081, 49 L.Ed.2d 1116 (1976). As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification.... "But if the person refuses to answer and the police take additional steps ... to obtain an

answer, then the Fourth Amendment imposes some minimal level of objective justification to validate the detention or seizure."

*In re Jermaine, supra* at 509–11, 582 A.2d at 1061, *quoting INS v. Delgado,* 466 U.S. 210, 216, 104 S.Ct. 1758, 1762, 80 L.Ed.2d 247 (1984).

The Commonwealth concedes that the only basis for the initial approach by Officer Ashby was the radio bulletin to "investigate male selling drugs". There was no description of the alleged felon, and the anonymous tip possessed no other indicia of reliability. This information was certainly insufficient as a matter of both state and federal constitutional law to establish reasonable suspicion to support a stop in the absence of corroborating observations by the investigating officers.

Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause. *Adams v. Williams, supra,* demonstrates as much. We there assumed that the unverified tip from the known informant might not have been reliable enough to establish probable cause, but nevertheless found it sufficiently reliable to justify a *Terry* stop. 407 U.S. [143] at 147, 92 S.Ct. 1921 [at 1923], 32 L.Ed.2d 612. *Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability.* Both factors—quantity and quality—are considered in the "totality of the circumstances—the whole picture", *United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, [695], 66 L.Ed.2d 621, (1981), that must be taken into account when evaluating whether there is reasonable suspicion. Thus, if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable. The [*Illinois v.*] *Gates* [462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527], Court

applied its totality of the circumstances approach in this manner, *taking into account the facts known to the officers from personal observation, and giving the anonymous tip the weight it deserved in light of its indicia of reliability as established through independent police work.* The same approach applies in the reasonable suspicion context, the only difference being the level of suspicion that must be established.

*Alabama v. White*, 496 U.S. 325, 330–331, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301 (1990) (emphasis added).

The fact that Officer Ashby and his partner were directed by a radio message based upon an anonymous tip to "investigate male selling drugs" does not alter the fact that upon approaching the two men standing under the roof ledge out of the rain, the officers did not then have sufficient information to justify a *Terry* stop. *See: Commonwealth v. Jackson*, 359 Pa.Super. 433, 437, 519 A.2d 427, 430 (1986); *Adams v. Williams*, 407 U.S. 143, 145, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). *Cf. Commonwealth v. Lagana*, 517 Pa. 371, 375, 537 A.2d 1351, 1354 (1988) (*Terry* stop and frisk permissible where radio broadcast indicated a white male 20 to 25 years of age wearing a yellow raincoat was at the corner of 9th and Wharton Streets in Philadelphia with a gun and, upon arriving two minutes later, the officers observed "a white male in his early twenties wearing a yellow raincoat who made his presence even more obvious because he was casing a business establishment with a pair of binoculars in the pouring rain"); *Commonwealth v. Anderson*, 481 Pa. 292, 392 A.2d 1298 (1978) (Police did not have reasonable suspicion for *Terry* stop and frisk based on a radio broadcast that a black male named Perry about 5'10" tall with a bush style haircut wearing a dark coat, who had escaped from a drug rehabilitation program, was in a bar at 57th and Master Streets in Philadelphia).

■ The Commonwealth argues that appellant's flight, upon being approached by the uniformed police officer, constituted the requisite corroborating detail and created a reasonable suspicion that criminal activity was afoot, justifying a forcible stop. This argument raises important, interesting and

exceedingly complex issues regarding the scope of the constitutional protections afforded to the citizens of this Commonwealth.[4]

The United States Supreme Court recently altered the analysis historically utilized in reasonable suspicion/flight cases when, in *California v. Hodari D.,* —— U.S. ——, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), the Court held that items abandoned during a flight from an attempted *Terry* stop were admissible without any inquiry into the legality of the basis for the attempted stop.

> In *Hodari,* plain-clothed officers were patrolling a high crime section of Oakland, California, when they spotted several youths congregated around a car which was parked on a curb. Upon seeing the officers' unmarked car, the group took flight in different directions. With suspicions aroused, the officers pursued the youths. During a foot chase between Hodari and one officer, Hodari tossed a small rock-like object, and was thereafter tackled and handcuffed. A pager and $130 in cash were found on Hodari, and the abandoned property was determined to be crack cocaine. At trial, Hodari's motion to suppress the evidence was denied. On appeal, the appellate court reversed, finding that Hodari had been seized at the time he abandoned the property, and the seizure was in violation of the Fourth Amendment. On *certiorari* to the Supreme Court, *California conceded that the officers did not have the requisite reasonable suspicion to stop Hodari.* However, the state argued that the more appropriate inquiry was whether Hodari had been seized when he abandoned the property where the officer's attempt to stop Hodari had been unsuccessful. The court adopted California's argument and permitted the inquiry to overstep a question of whether reasonable suspicion existed for a *Terry* stop, where such attempted stop was thwarted by a fleeing suspect. The opinion, authored by Justice Scalia, utilized a common law approach to the question of seizure and arrest and reasoned that a

---

4. Appellant has not briefed the issue of the effect of Article 1, Section 8 of the Pennsylvania Constitution on this issue.

seizure had not occurred where Hodari refused to submit to the officer's show of authority and, therefore, there was not a restraint on Hodari's liberty. Concluding that Hodari had not been seized, the court reasoned that the crack cocaine was abandoned property, which was lawfully recovered by the police and was admissible evidence against Hodari. Instantly, we have an almost identical factual situation. Appellant was approached by a police officer who did not have reason to suspect appellant of criminal activity, but was acting on the reported observation of a passerby that appellant was "acting suspiciously". As in *Hodari*, the uniformed officer made a show of authority, which in this case was ordering appellant to "stand fast". Despite the officer's attempt to detain appellant, appellant fled the scene.

*Commonwealth v. Peterfield*, 415 Pa.Super. 313, 324–25, 609 A.2d 540, 546 (1992) (emphasis supplied) (Dissenting Opinion by Ford–Elliott, J.).

In the instant case, pursuant to *Hodari D*, had Officer Ashby retrieved the "object" thrown by appellant, and had it been a prohibited weapon or contraband, it would have been admissible into evidence as abandoned property. However, the question presented by the case at bar is whether that flight established reasonable suspicion to forcibly detain appellant. We think not.

 This Court has previously held, that "flight, in and of itself, cannot constitute probable cause to arrest. *Commonwealth v. Pegram*, 450 Pa. 590, 593, 301 A.2d 695, 697 (1973). The mere fact that a person 'quickens his pace' upon being observed by police and starts to run when a police officer begins to chase him *does not* give rise to a reasonable belief that criminal activity is afoot, *and is therefore insufficient to justify even a Terry stop, absent some other factor which would give rise to criminal conduct*". *Commonwealth v. Martinez*, 403 Pa.Super. 125, 128, 588 A.2d 513, 514 (1991) *citing Commonwealth v. Jeffries*, 454 Pa. 320, 325, 311 A.2d 914, 917 (1973) (emphasis supplied).

A panel of this Court, in *Commonwealth v. Metz*, 412 Pa.Super. 100, 602 A.2d 1328 (1992), recently grappled with a closely related issue—whether the attempt by a driver to avoid a roadblock was sufficient, standing alone, to constitute reasonable suspicion justifying an investigatory stop. While the Court, in a plurality decision[5], held that it was, the reasoning of our esteemed colleague, Judge John T.J. Kelly, Jr., is instructive in our reflection upon and resolution of the issue presently before this Court:

> Because I believe that compliance with a roadblock within the motorist's sight is legally obligatory, I would hold that avoidance of such a roadblock provides a basis for the police to presumptively infer that the motorist who does so is conscious of his or her guilt and is seeking to avoid its detection. The presumption could, of course, be rebutted by the facts which might otherwise dispel such suspicion, *e.g.* evidence of a medical emergency, etc. Where no evidence to rebut the presumption exists, however, I would find the officer maintains a reasonable suspicion that criminal activity is afoot and that an investigatory stop made thereafter is constitutionally permissible.
>
> I note that I find nothing about such a presumption in any way inconsistent with either *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), or its progeny which concludes that a pedestrian's flight alone does not constitute reasonable suspicion. *See Commonwealth v. Jeffries*, 454 Pa. 320, 325, 311 A.2d 914, 917 (1973); *Commonwealth v. Martinez*, 403 Pa.Super. 125, 128, 588 A.2d 513, 514 (1991). No court of which I am aware, certainly none cited by any *sub judice*, has authorized police to conduct systematic *obligatory* "sidewalk blocks". The pedestrian, therefore, has *no obligation* to comply with any detention upon merely being viewed by police. *See Florida v. Bostick* [501 U.S. ——, 111 S.Ct. 2382, 115 L.Ed.2d 389], *supra*. The free citizen in a free country such as ours of course retains the

---

5. Judge Popovich wrote the lead opinion finding reasonable suspicion to stop, Judge Wieand filed a concurring opinion based upon the defendant's waiver of the issue, and Judge Kelly filed a concurring statement.

discretion to run, walk, crawl or stop at that moment or any other under such circumstances, and accordingly, neither the police nor the courts can draw any adverse inferences from the exercise of *any* such discretion.

*Commonwealth v. Metz, supra* at 118–19, 602 A.2d at 1337 (emphasis in original) (Concurring opinion by Kelly, J.)

We are unwilling, as a matter of law, to hold that an anonymous tip bearing no indicia of reliability, and containing no predictions of future behavior, and unsupported by any corroborative observations by an officer, when coupled with flight[6], justifies a forcible *Terry* stop.

This Court, in *Commonwealth v. Martinez*, 403 Pa.Super. 125, 588 A.2d 513 (1991), *allo. denied*, 530 Pa. 653, 608 A.2d 29 (1992), noted that we had earlier rejected, in *Commonwealth v. Espada*, 364 Pa.Super. 604, 528 A.2d 968 (1987), a similar argument seeking to justify a *Terry* stop on the basis of an obvious attempt to evade police officers:

[I]n order for a stop, or "seizure", to be reasonable, and therefore legal under *Terry v. Ohio*, the police officer's reasonable and articulable belief that criminal activity was afoot must be linked with his observation of suspicious or irregular behavior on behalf of the particular defendant stopped. 364 Pa.Super. at 609, 528 A.2d at 970. Mere presence near a high crime area or in the vicinity of a

**6.** Centuries ago, some observers proclaimed: Innocent men do not flee because the earth is flat. Some beliefs, of course, die hard. The observations of United States Supreme Court Justice John Paul Stevens aptly addresses this notion:

The Court's gratuitous [Biblical] quotation ... mistakenly assumes that innocent residents have no reason to fear the sudden approach of strangers. We have previously considered, and rejected, this ivory-towered analysis of the real world for it fails to describe the experience of many residents, particularly if they are members of a minority.... It has long been "a matter of common knowledge that men who are entirely innocent do sometimes fly from the scene of a crime through fear of being apprehended as the guilty parties, or from an unwillingness to appear as witnesses. Nor is it true as an accepted axiom of criminal law that 'the wicked flee when no man pursueth, but the righteous are as bold as a lion' ". *Alberty v. United States*, 162 U.S. 499, 511, 16 S.Ct. 864, [868], 40 L.Ed. 1051 (1896).

*California v. Hodari D.,* — U.S. —, — n. 4, 111 S.Ct. 1547, 1553 n. 4, 113 L.Ed.2d 690, 700 n. 4 (Stevens, J., dissenting).

recently reported crime does not justify a *Terry* stop. *Id.* Conversely, an officer's observation of irregular behavior without a concurrent reasonable belief that crime is afoot renders a stop unreasonable. 364 Pa.Super. at 609–10, 528 A.2d at 970.

What are the specific, articulable facts which would reasonably warrant a belief that criminal activity was afoot, when Officer Lee ordered Martinez to put her hands on the police vehicle? Martinez had walked quickly away from a street corner, at 12:20 a.m. She was holding her hands in the front of her coat and walking quickly up the street. There are no other articulable facts attributable to Martinez.

\* \* \* \* \* \*

This case is quite similar on its facts to those presented in *Commonwealth v. Jeffries*, 454 Pa. 320, 311 A.2d 914 (1973). There, four police officers in an unmarked vehicle observed Jeffries walking along a public street. When Jeffries saw the officers, he quickened his pace. One officer left the vehicle and began to pursue Jeffries who then began to run. Before being overtaken, Jeffries threw a small package under a nearby automobile. The package was recovered and found to contain heroin. Our Supreme Court rejected the Commonwealth's arguments that Jeffries' flight supplied the necessary factual foundation for probable cause or, in the alternative, reasonable grounds to believe criminal activity was afoot under *Terry v. Ohio*. The court went on to hold that the evidence retrieved from under the automobile must be suppressed, due to the police officers' unlawful and coercive activity, citing *Commonwealth v. Pollard*, 450 Pa. 138, 299 A.2d 233 (1973).

*Commonwealth v. Martinez, supra* at 131–133, 588 A.2d at 515–517 (1991). *See also: Commonwealth v. Harper*, 416 Pa.Super. 608, 617 n. 3, 611 A.2d 1211, 1216 n. 3 (1992) ("[I]n *Michigan v. Chesternut* [486 U.S. 567, 108 S.Ct. 1975, 100 L.Ed.2d 565], the Court reiterated that in determining whether a *Terry* stop has occurred, it is necessary to utilize a standard that 'allows the police to determine in advance whether the conduct contemplated will implicate the Fourth

Amendment'. Such is certainly not the case in *Hodari D.*, for what would otherwise be a *groundless* and thus *illegal Terry* seizure becomes conduct totally outside the Fourth Amendment merely because of the suspect's nonsubmission"); *Commonwealth v. Hunt*, 280 Pa.Super. 205, 210, 421 A.2d 684, 686 (1980) ("Appellant's flight alone, of course, is insufficient to establish probable cause".)

Our Supreme Court recently reaffirmed that the requirements necessary to justify a *Terry* stop are constitutionally based and must be narrowly construed:

> We emphatically reject the Superior Court's "ends justify the means" analysis. By focusing its attention only upon the serious ills inflicted upon society by illegal narcotics, the Superior Court failed to recognize and respond to necessary constitutional constraints on excessive police conduct. The seriousness of the criminal activity under investigation, whether it is the sale of drugs or the commission of a violent crime, can never be used as justification for ignoring or abandoning the constitutional right of every individual in this Commonwealth to be free from intrusions upon his or her personal liberty absent probable cause.
>
> Accordingly, we decline to adopt the rationale of the Superior Court or the arguments offered by the Commonwealth, and thus, we decline to expand the appropriately narrow "reasonable suspicion" exception to probable cause already established by the United States Supreme Court in *Terry v. Ohio* and by this Court in *Commonwealth v. Hicks*, 434 Pa. 153, 253 A.2d 276 (1969).

*Commonwealth v. Rodriquez*, 532 Pa. 62, 73, 614 A.2d 1378 (1992).

 While we find the evidence insufficient to establish the offense of resisting arrest, we find that the challenge to the sufficiency of the evidence as to aggravated assault is meritless. Aggravated assault is defined by Section 2702 of the Crimes Code as follows:

(a) *Offense defined*—a person is guilty of aggravated assault if he:

\* \* \* \* \* \*

(3) attempts to cause or intentionally or knowingly causes bodily injury to a police officer or firefighter *in the performance of duty.*

18 Pa.C.S. § 2702(a)(3) (emphasis supplied).

Appellant contends that the evidence was insufficient to establish that the injury to Officer Borans occurred "in the performance of duty", an essential element of the offense. Unlike Section 5104 of the Crimes Code, the offense of aggravated assault, 18 Pa.C.S. § 2702(a)(3), does not require that the assault occur during an attempt to effectuate a *lawful arrest.* In 1986, the legislature amended 18 Pa.C.S. § 2702(a)(3) and substituted the words "in the performance of duty" for the words "making or attempting to make a lawful arrest". This change broadened the scope of the statute, evidencing the concern of the legislature with protecting police officers from bodily injury under any circumstances.

In the instant case, when Officer Borans arrived on the scene to assist Officer Ashby and his partner, she was performing her official duty as a police officer. Consequently, when appellant pushed Officer Borans into the broken window, he committed an aggravated assault as defined by 18 Pa.C.S. § 2702(a)(3). Whether or not Officer Ashby was in the process of making a lawful arrest is irrelevant since Officer Borans was performing a necessary function of a police officer in coming to the aid of Officer Ashby.[7] The evidence was, therefore, sufficient to establish the element of "performance of duty" and, therefore, this challenge to the sufficiency of the evidence must be rejected.[8]

---

**7.** Similarly, if appellant had been convicted of aggravated assault based upon an attack upon Officer Ashby, the issue of the legality of the arrest would have been *irrelevant* to a determination of the sufficiency of the evidence to sustain the conviction since " 'even an unlawful arrest does not excuse an assault upon an arresting officer' ". *Commonwealth v. French,* 396 Pa.Super. 436, 445, 578 A.2d 1292, 1296 (1990), *quoting Commonwealth v. McKeirnan,* 337 Pa.Super. 403, 408, 487 A.2d 7, 10 (1985).

**8.** We summarily reject the argument that the Commonwealth failed to establish the necessary *mens rea* for aggravated assault. *See Commonwealth v. Fry,* 341 Pa.Super. 333, 336, 491 A.2d 843, 844–845 (1985); *In the Interest of J.L.,* 327 Pa.Super. 175, 178, 475 A.2d 156, 157 (1984).

We, therefore, vacate the finding of guilty of resisting arrest, but affirm the adjudication of delinquency based upon the finding that appellant committed the offense of aggravated assault, 18 Pa.C.S. § 2702(a)(3).

TAMILIA, J., files concurring and dissenting opinion.

TAMILIA, Judge, concurring and dissenting.

I join the majority in its affirmance of the adjudication of delinquency based on the aggravated assault. I dissent to the vacation of the finding of guilt as to resisting arrest. In conformity with the principles set forth by our Supreme Court in *Commonwealth v. McCullum*, 529 Pa. 117, 602 A.2d 313 (1992), the Commonwealth as verdict winner is entitled to have this Court determine whether the evidence, and all reasonable inferences drawn therefrom, in a light most favorable to the Commonwealth, is sufficient to establish the elements of the crime. I fail to see the logic in the majority's reasoning that permits the finding of aggravated assault because the police officer is attempting to subdue a suspect *in the performance of his duty* yet finds the same behavior is not the basis of a resisting arrest charge. The performance of the officers' duty was an attempt to subdue the appellant to effect an arrest. Under a myriad of cases such a forceful attempt to take control of appellant would be construed as an arrest or at least a taking into custody and would result in suppression of any statement obtained from the person without providing Miranda warnings. To say this was not a lawful arrest or *discharging any other duty* is to ignore the realities of modern police duties. This Opinion imposes a burden on police which revisions of 18 Pa.C.S. § 5104, Resisting arrest or other law enforcement, attempted to alleviate. We cannot ask the police to vigorously pursue activity of a suspicious nature relying on their street expertise then move to limit the results of their reasonable actions. I would affirm the trial court.

CAVANAUGH, J., joins.