629 A.2d 1387

**In the Interest of D.W.**

**Appeal of D.W.**

Superior Court of Pennsylvania.

Submitted June 7, 1993.

Filed Aug. 3, 1993.

630

John W. Packel, Asst. Public Defender, Philadelphia, for appellant.

Kathy L. Echternach, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before OLSZEWSKI, KELLY and JOHNSON, JJ.

OLSZEWSKI, Judge.

Appellant D.W. appeals from the order adjudicating him delinquent on September 23, 1992.[1]  The Honorable Joseph P. McCabe, Jr. entered the order after finding D.W. guilty of possession of cocaine with intent to distribute and criminal conspiracy and placed him in the Dixon House Pride and Youth Program for juvenile offenders.  Post-verdict motions were filed and denied.  The sole issue presented for our review is whether the Honorable Sheldon C. Jelin erred in denying D.W.'s pre-trial motion to suppress physical evidence. We affirm.

On appeal from a motion to suppress, we only review whether the record supports the trial court's factual findings and whether the trial court's legal conclusions drawn from the facts are in error. *Commonwealth v. Medley,* 531 Pa. 279, 612 A.2d 430 (1992); *Commonwealth v. Merkt,* 411 Pa.Super. 127, 600 A.2d 1297 (1992).  Our review of the record reveals that on April 20, 1992, at approximately 2:40 a.m., Officer Bernard Ramsey and his partner, Officer Aaron Green, received a radio call to investigate a black male in a green jacket selling

---

1.   D.W. mislabels his appeal as taken from the order entered December 1, 1992, denying his post-verdict motions.  His appeal is actually from the adjudication of delinquency and commitment.  42 Pa.C.S.A. § 742.

narcotics at 1003 Brown Place in Philadelphia. N.T. 8/27/92 at 4. When they arrived at the scene, the officers observed five black males standing on the step in front of 1003 Brown Place. One of the men handed an object to D.W. and received something in return from a third man ["L.C."]. N.T. 8/27/92 at 6. As the police officers approached the group, three of the men fled. D.W. and L.C. remained and were ordered to stand against the wall. N.T. 8/27/92, at 6. Officer Green then asked L.C. what was in his pocket and L.C. said it was candy. N.T. 8/27/92, at 28. Officer Green searched L.C. and retrieved a plastic baggie containing vials of a white chalky substance, later determined to be cocaine. N.T. 8/27/92 at 6. L.C. attempted to flee and Officer Green pursued him. At that point, Officer Ramsey instructed D.W. to get on the ground but D.W. refused and a struggle ensued. After restraining him, Officer Ramsey conducted a search and discovered $235.00 in U.S. currency in D.W.'s left front pocket.

On appeal, D.W. argues that the trial court erred in denying his pre-trial motion to suppress the money seized from his person, claiming that the officers did not have probable cause to search him or reasonable suspicion to detain him for investigatory purposes. We disagree.

Probable cause exists where an officer is presented with facts and circumstances which are sufficient to warrant a prudent individual in believing that an offense was committed and that defendant committed it. *Commonwealth v. Dennis*, 417 Pa.Super. 425, 612 A.2d 1014 (1992). In determining whether probable cause existed in a particular situation, "a court will not look just at one or two individual factors, but will consider the 'totality of the circumstances' as they appeared to the arresting officer." *Id.* We also focus on the circumstances as seen through the eyes of a trained officer, taking into consideration that probable cause does not involve certainties, but rather "the factual and practical considerations of everyday life on which reasonable and prudent men act." *Id.* (quoting *Commonwealth v. Simmons*, 295 Pa.Super. 72, 440 A.2d 1228 (1982)); *see also Interest of J.H.*, 424 Pa.Super.

224, 622 A.2d 351 (1993). Finally, our Courts have repeatedly emphasized that determinations of probable cause must be based on a common-sense non-technical analysis. *Id.*

Guided by this standard, our review of the record substantiates the trial court's conclusion that the police officers had probable cause to arrest D.W. After receiving the radio report and observing the suspicious exchange at the address indicated in the report, the officers had reasonable suspicion, based upon specific and articulable facts, to detain the suspects for further investigation. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

> Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability. Both factors—quantity and quality—are considered in the "totality of the circumstances—the whole picture", *United States v. Cortez* [449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981) ].... Thus, if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable. The [*Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) ] Court applied its totality of the circumstances approach in this manner, taking into account the facts known to the officer from personal observation, and giving the anonymous tip the weight it deserved in light of its indicia of reliability as established through independent police work. The same approach applies in the reasonable suspicion context, the only difference being the level of suspicion that must be established.

*Interest of Barry W.,* 423 Pa.Super. 549, 561–62, 621 A.2d 669, 676 (1993) (quoting *Alabama v. White,* 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990)) (emphasis omitted).

Clearly, the anonymous radio tip alone could not have constituted sufficient information to justify a *Terry* stop. *Barry W.,* at 562, 621 A.2d at 675 (radio bulletin instructing officers to "investigate male selling drugs" insufficient to establish reasonable suspicion absent description of suspect or corroborating observations by officer); *Commonwealth v.*

*Anderson,* 481 Pa. 292, 392 A.2d 1298 (1978); *compare, Interest of S.J.,* 425 Pa.Super. 270, 624 A.2d 1068 (1993) (radio bulletin reporting that a black female, wearing red jacket, blue jeans, red sneakers and hair curlers, was selling drugs justified investigatory stop, but not frisk, of suspect matching description at the specified location). Although the radio tip described the suspect as wearing a green jacket, there is no indication that any of the suspects matched this description. Likewise, police observation of a suspicious exchange between two citizens or their location in a high crime area would fail to justify the stop in the absence of a corroborating information. *Commonwealth v. Greber,* 478 Pa. 63, 385 A.2d 1313 (1978) (absent prior information that a drug deal would occur, police had no basis to detain appellee after observing single exchange of package in high crime area on hunch that exchange of drugs had taken place); *Commonwealth v. Agnew,* 411 Pa.Super. 63, 600 A.2d 1265 (1991); *Commonwealth v. Espada,* 364 Pa.Super. 604, 528 A.2d 968 (1987) (mere presence in high crime area provides no basis for *Terry* stop).

These facts, viewed in the aggregate, however, were sufficient to create a reasonable belief that criminal activity was afoot. *Commonwealth v. Dennis,* 417 Pa.Super. 425, 612 A.2d 1014 (1992) (neighbors' complaints coupled with police observation of money transfer for small item); *Commonwealth v. Price,* 318 Pa.Super. 240, 464 A.2d 1320 (1983) (anonymous tip regarding drug dealing corroborated by police observation at specified location); *Commonwealth v. Jones,* 506 Pa. 262, 484 A.2d 1383 (1984) (informant's tip corroborated by police observation of possible drug activity); *Commonwealth v. Patterson,* 405 Pa.Super. 17, 591 A.2d 1075 (1991) (neighbors' reports of drug activity coupled with police observation of heavy foot traffic in alley behind alleged "crack house" during early morning hours justified *Terry* stop).

Moreover, the fact that the suspicious conduct occurred in the early morning hours and in a high crime area provides additional support for our conclusion. *See Commonwealth v. Jackson,* 359 Pa.Super. 433, 439, 519 A.2d 427, 431 (1986) ("the time and place of an encounter may indicate that a person,

conspicuous through their solitary presence at a late hour or desolate location, may be the object of a search"); *Commonwealth v. Cortez*, 507 Pa. 529, 491 A.2d 111 (1985), *cert. denied*, 474 U.S. 950, 106 S.Ct. 349, 88 L.Ed.2d 297 (sufficient cause to stop arising out of defendant's location in an alley in early hours of a snowy morning when streets were empty). Consequently, while the radio tip may not have provided a sufficient description of the suspect to warrant further investigation, Officer Ramsey's testimony that he saw D.W. receive money from another man in exchange for a "packet" at the location described provided ample basis for a *Terry* stop. N.T. 9/23/92, at 7–8.[2]

During the lawful investigative detention, the officers discovered additional information which confirmed their suspicion that D.W. and the other men were exchanging drugs. First, three of the men fled when the officers approached the group. *See Commonwealth v. Phillips*, 338 Pa.Super. 274, 487 A.2d 962 (1985) (flight of companions upon approach of suspect by officer supported probable cause finding). Second, Officer Green searched L.C. and retrieved a plastic baggie containing vials of cocaine.[3] The discovery of contraband possessed by L.C. confirmed the officers' suspicions and established probable cause to arrest D.W. *See, Commonwealth v. Brown*, 417

**2.** We note that Officer Ramsey did not identify the objects exchanged between D.W. and the other man as money and a packet at the suppression hearing. *See* N.T. 8/27/92, at 6. Nevertheless, we may consider the evidence presented both at the suppression hearing and at trial when reviewing the trial court's ruling on a motion to suppress. *See Commonwealth v. Chacko*, 500 Pa. 571, 459 A.2d 311 (1983).

**3.** We need not determine whether Officer Green's conduct toward L.C. was proper under the scope of a *Terry* search since D.W. has no expectation of privacy in the person of another and, therefore, has no standing to challenge the officer's conduct relating to the discovery of the drugs. *See e.g., Commonwealth v. Yacoubian*, 339 Pa.Super. 413, 489 A.2d 228 (1985) (Commonwealth was not required, in order to establish probable cause for believing illegal contraband had originated in appellant's dry cleaning establishment, to prove validity of police stop of vehicle driven by individual who recently purchased illegal contraband at appellant's establishment); and *Commonwealth v. Oglialoro*, 525 Pa. 250, 579 A.2d 1288 (1990) (expectation of privacy is present when the individual, by his conduct, exhibits an actual, subjective expectation of privacy and that the subjective expectation is one that society is prepared to recognize as reasonable).

Pa.Super. 165, 169, 611 A.2d 1318, 1320 (1992) ("investigative detention may ripen into an arrest based on probable cause when additional information confirming earlier suspicion is uncovered"). The subsequent search of D.W. and discovery of $235.00 in small bills was therefore valid as a search incident to a lawful arrest. *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *Commonwealth v. Frank,* 407 Pa.Super. 500, 595 A.2d 1258 (1991).

We further find that D.W.'s reliance on our recent decision in *Interest of Barry W., supra,* is misplaced. In *Barry W.,* police officers responded to a radio bulletin to "investigate male selling drugs." The alleged suspect did not fit a particular description and the anonymous tip was unsupported by other indicia of reliability. At the location designated by the tip, the officer observed two males standing on the street corner, approached them and said "stop police." *Id.* at 562, 621 A.2d at 671. The suspects fled and, as the officer chased them, one of the suspects threw an object to the other. We recognized that the suspects' flight coupled with an anonymous tip, bearing no indicia of reliability and containing no predictions of future behavior, did not justify a forcible *Terry* stop in the absence of corroborative observations by the police officer. *Id.* at 567–68, 621 A.2d at 678. Conversely, in this case, the officers observed the suspicious exchange of cash for a small packet, in addition to the anonymous tip and the flight of D.W.'s companions. We therefore conclude, after careful study of the facts in the instant case and a review of the decided cases, that the officers had reasonable suspicion to detain D.W. which developed into probable cause. Accordingly, we affirm.

Order affirmed.

JOHNSON, J., concurs in the result.