593 A.2d 1288

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**James J. PRICE, Appellant.**

Superior Court of Pennsylvania.

Submitted June 5, 1991.

Filed July 3, 1991.

Candace Cain, Pittsburgh, for appellant.

Kevin F. McCarthy, Asst. Dist. Atty., Pittsburgh, for Com., appellee.

Before OLSZEWSKI, HUDOCK and HOFFMAN, JJ.

HUDOCK, Judge:

This is an appeal from the judgment of sentence imposed upon Appellant after he was found guilty of driving under

the influence of alcohol. Timely filed post-verdict motions were denied by the trial court, and Appellant was sentenced to a fine and a term of imprisonment of between thirty days and six months. This direct appeal followed. We reverse.

The conviction is the result of the arrest of Appellant on March 23, 1989. On that day, Special Agent Mark Sites of the Federal Bureau of Investigation (FBI) was travelling in an unmarked FBI vehicle on Balf Avenue in Bellevue, Allegheny County. Sites observed a vehicle approaching a stop sign at the intersection of Balf and Orchard. The vehicle did not slow at the stop sign, but instead made a wide right hard turn, missing Agent Sites' automobile by approximately one and one-half feet. The turning automobile swerved halfway into the on-coming lane and made a right-hand turn onto Balf Avenue.

Fearing that the driver was perhaps in distress or a danger to others, Agent Sites used his lights and siren to pull Appellant over. Agent Sites identified himself to Appellant as an FBI agent and showed Appellant his badge. Agent Sites noticed the odor of alcohol on Appellant. Agent Sites then decided that the matter was beyond his jurisdiction and requested a neighbor to call the local police for him.

Agent Sites told Appellant not to move and to remain seated in the automobile. Agent Sites never told Appellant he was under arrest. Appellant followed Agent Sites' directions. Agent Sites later testified that he would have stopped Appellant had he tried to leave the scene. After the local police arrived, Agent Sites briefed them on what had occurred and prepared, at their request, a report on the incident.

Appellant argues that the trial court abused its discretion when it denied his motion to quash the criminal information and suppress the evidence. He contends that the information should have been quashed since an FBI agent lacks the authority to stop a person for a motor vehicle violation and then arrest that person for driving

under the influence.[1] In support of this claim, Appellant states that since Agent Sites had no reason to believe a felony was being committed,[2] and since, by statute, citizen's arrests for summary offenses are disallowed, Agent Sites' actions amounted to an illegal arrest. As such, Appellant further contends, all evidence from that arrest was tainted and should have been suppressed by the trial court.

Although not cited by Appellant, *Commonwealth v. Leet,* 401 Pa.Super. 490, 585 A.2d 1033 (1991) supports Appellant's arguments. In *Leet,* a deputy sheriff, in a marked sheriff's vehicle, observed a vehicle cross the double yellow lines and pass several vehicles. The deputy sheriff pulled the vehicle over, observed a beer can in the front seat, and performed a field sobriety test on the driver. The driver passed the field sobriety test but could not produce a driver's license. A call by the deputy sheriff revealed that the license was under suspension. A police officer arrived at the scene, where, subsequently, marijuana and methamphetamine were found in the vehicle. The police officer cited the driver for driving with an expired license, driving with an open can of beer, and passing in a no-passing zone. The driver was also charged with possession of a controlled substance and possession with intent to deliver.

The trial court, holding that deputy sheriffs did not have authority to make warrantless arrests for Vehicle Code violations, suppressed the evidence. The Superior Court affirmed, noting that

[b]ecause [the deputy sheriff] did not have authority to arrest Leet for an alleged violation of the Vehicle Code,

---

1. We note that the remedy for an illegal arrest is the suppression of the evidence obtained by the illegal arrest, and not, as Appellant argues, the quashing of the information. "[A] court cannot quash an information merely because the court believes that some or all of the Commonwealth's evidence has been obtained illegally." *Commonwealth v. McKeirnan,* 337 Pa.Super. 403, 407, 487 A.2d 7, 10 (1985).

2. FBI agents are authorized by 18 U.S.C. § 3052 to make warrantless arrests if they have reasonable grounds to believe that the person to be arrested has committed or is committing any felony cognizable under the laws of the United States.

suppression of evidence seized as a result of his unlawful arrest was an appropriate remedy. To hold otherwise would be to vest in deputy sheriffs by indirection the right to effect warrantless arrests for Motor Vehicle Code violations by holding motorists at gunpoint or otherwise until a "police officer" arrives on the scene to make a lawful arrest.

*Commonwealth v. Leet,* 401 Pa.Superior Ct. at 499, 585 A.2d at 1038.

It is difficult to discern why an FBI agent, in a fact situation very similar to that of *Leet,* should be empowered to do what a deputy sheriff was prohibited from doing in *Leet.* Indeed, Appellant notes in his brief that "there may be even stronger public policy reasons for not allowing Federal Agents to make non-felony arrests outside their jurisdiction." (Appellant's brief at p. 12).[3]

The Commonwealth, however, argues that *Leet* should not control because it conflicts with a decision of the Supreme Court of Pennsylvania, *Commonwealth v. Galloway,* 525 Pa. 12, 574 A.2d 1045 (1990). In *Galloway,* a special agent of the Pennsylvania Attorney General's Office pulled over a truck that had swerved erratically near the agent's unmarked vehicle. After using his siren and red light to pull over the vehicle, the agent ordered the driver out of the cab with a bullhorn, showed the driver his badge, told him he was under arrest, and gave him some manner of *Miranda* warning. The agent radioed the State Police who then took the driver into custody, gave him a breathalyzer test, and charged him with driving under the influence. *Id.,* 525 Pa. at 13, 574 A.2d at 1046. The trial court quashed the information on the grounds that the special agent was not authorized by statute to make such arrests, and, therefore, the arrest was illegal. The Superior Court affirmed.

---

**3.** In its brief the Commonwealth concedes that if *Leet* is found controlling, Appellant's conviction must be reversed. But the Commonwealth cannot really mean this, since it goes on to argue that even if *Leet* controls, the exclusion of evidence was not called for, and that, therefore, the judgment of the trial court was correct.

The Supreme Court reversed the decision, however. The lead opinion by Justice Papadakos, joined by only two other justices, concluded that although the arrest by the special agent was illegal (since the agent was not authorized to make such arrests), the subsequent arrest by a state police trooper was legal. The information on the erratic driving given to police by the special agent, the information furnished by a second witness, and the presence of an odor of alcohol, were "more than enough to establish probable cause." *Id.*, 525 Pa. at 20, 574 A.2d at 1049. Thus, the validity of the second arrest was not affected by the illegality of the initial stop.

The difficulty with *Galloway* is that it is of limited precedential value; only three of the six justices who heard the case held that the second arrest by the state police trooper was valid. Two justices dissented, and another, Chief Justice Nix, concurred with the result but disagreed with the reasoning of the opinion. Chief Justice Nix believed that the initial arrest by the special agent was a valid citizen's arrest. "In this case, the agent did what he had a right to do as an ordinary citizen, which he indeed was." *Id.*, 525 Pa. at 21, 574 A.2d at 1050 (Nix, Chief Justice, concurring in result). Hence, his concurrence with the result. But he rejected the plurality's view that even if the initial arrest was illegal, the subsequent arrest by the state police trooper could be legal.

> If it is accepted that the detention of appellee [defendant] by the Agent, which was made under the color of law, was an illegal one, it would necessarily infect the subsequent "warrantless arrest" of the trooper.

*Id.*

The dissent viewed the initial arrest as illegal and the subsequent arrest as illegal also, the illegality of the second arrest stemming from that of the first arrest.

Hence, five justices thought the initial arrest by the special agent to be illegal, three justices thought such an arrest could lead to a legitimate subsequent arrest by a

police officer, and three justices thought that an illegal arrest could not be subsequently validated. *Galloway*, therefore, can only be said to stand unambiguously for one proposition; that warrantless arrests for summary motor vehicle offenses by law enforcement officers not authorized by law to make such arrests are illegal. *Leet*, on the other hand, clearly holds that such an illegal arrest will defeat any subsequent arrest by a duly authorized police officer. *Commonwealth v. Leet, supra,* 401 Pa.Super. at 498–499, 585 A.2d at 1038.

*Galloway* and *Leet*, therefore, mandate that in the present case, the initial arrest by FBI Agent Sites was illegal, and that the subsequent arrest by the local police was tainted by the illegality of the first arrest.

■ The Commonwealth also argues that even if the subsequent arrest by the local police is found to have been tainted, and therefore made illegal, by the initial arrest, the application of the exclusionary rule is inappropriate; since Appellant's fundamental constitutional rights were not violated, Appellee argues, the exclusionary rule is a disproportionately severe remedy. Appellee cites several Pennsylvania appellate decisions in support of this claim.

In *Commonwealth v. Corley*, 507 Pa. 540, 491 A.2d 829 (1985), a private security guard detained and searched a robbery and shooting suspect. The Supreme Court of Pennsylvania affirmed the suspect's conviction, holding that the security guard's actions amounted to a citizen's arrest and that the exclusionary rule was an inappropriate remedy for such action. "Because the exclusionary rule is designed 'to prevent, not to repair' and is aimed at 'official misconduct', it would be a wholly improper extension to apply it here, as a remedy for private conduct." *Id.,* 507 Pa. at 545, 491 A.2d at 834. However, since the security guard who made the initial arrest was not a public law enforcement official, but rather a privately retained security guard, the holding

in *Corley* does not control a situation where, as here, the initial arrest was made by a public law enforcement official. An arrest by a public law enforcement official—like the FBI agent here—would have to be deemed state (or government) action, especially when, as in this case, the FBI agent used his badge and siren to effect the arrest.

The Commonwealth also cites *Commonwealth v. Mason*, 507 Pa. 396, 490 A.2d 421 (1985), for the proposition that a violation of law that does not affect fundamental constitutional rights does not call for the suppression of evidence. In *Mason*, a technical violation of the Pennsylvania Rules of Criminal Procedure relating to the issuance and execution of search warrants was held not to merit the application of the exclusionary rule. In that case, however, our Supreme Court found that there was no violation, technical or otherwise, of the rules of criminal procedure, and that absent any such violation, exclusion was of course inappropriate. The present case is distinguishable in that the FBI agent's arrest of Appellant was clearly illegal under both *Leet* and *Galloway*.

The Commonwealth contends, nevertheless, that Appellant's fundamental constitutional rights were not violated by the illegal arrest by the FBI agent, and, therefore, the application of the exclusionary rule would be inappropriate. For this claim, Appellee relies principally on *Commonwealth v. Goodman*, 347 Pa.Super. 403, 500 A.2d 1117 (1985).

In *Goodman* the State Attorney General was found to have initiated an investigation that was beyond the scope of his statutory authority. An *en banc* panel of this Court held that although the Attorney General's investigation of Goodman was not authorized by the Commonwealth Attorneys Act, the violation of that Act did not require the suppression of evidence seized pursuant to the Attorney General's investigation. The Court pointed out that the warrant used to search appellee Goodman's home was sup-

ported by probable cause and was issued by a neutral and disinterested judicial officer. The warrant was therefore valid in all respects save one; it was requested by the wrong officer of the Commonwealth—the Attorney General instead of the county district attorney. Such a violation of the Commonwealth Attorneys Act, the court concluded, did not violate appellee Goodman's constitutional right to be free from unreasonable searches and seizures. *Id.*, 347 Pa.Superior Ct. at 430, 500 A.2d at 1131.

We believe that *Goodman* is distinguishable from the case before us. The violation of the Commonwealth Attorneys Act in *Goodman* was largely technical; under a slightly different set of facts, the Attorney General would have been authorized to undertake the investigation and request the search warrant, and under the actual facts another agent of the Commonwealth, the county district attorney, was authorized to investigate Goodman. In the present case, however, Agent Sites' arrest of Appellant for an offense under the Motor Vehicle Code would have been lawful under no set of circumstances; only uniformed police officers are authorized to make warrantless arrests for such violations under 75 Pa.C.S. § 6304. We must, therefore, view Agent Sites' arrest of Appellant as a substantive, and not a technical, violation of that statute.

Furthermore, *Goodman* involved a situation in which the state acted with a warrant that was backed by probable cause and issued by a neutral and detached judicial officer, while the case before us concerns a warrantless arrest. Since the existence of a valid warrant was crucial to the court's reasoning in *Goodman*, we believe that that holding is not dispositive of a situation where, as here, there was a warrantless arrest. *Id.*, 347 Pa.Superior Ct. at 429–430, 500 A.2d at 1131. We must therefore conclude that the exclusionary rule is applicable to the present case; all evidence seized as a result of the illegal arrest should have been suppressed by the trial court.

The judgment of sentence is reversed and the matter is remanded for proceedings consistent with this opinion. Jurisdiction relinquished.

HOFFMAN, J., joins and also files a concurring statement.

HOFFMAN, Judge, concurring.

I write separately only to address further the Supreme Court decision in *Commonwealth v. Galloway*. In my view, *Galloway* is inapposite for an additional reason. The *Galloway* Court held that it was error to *quash* an information based upon an illegal arrest by a special agent of the Attorney General's Office, because a later arrest by a State Trooper *was* valid. I see this question—i.e., whether a prosecution is defective from its *inception* because of an unlawful arrest—as being distinguishable from the more limited question of whether certain evidence secured *as a result* of the illegal arrest should be suppressed.[1] And, on the latter point, I agree with the Majority that there is no question that the appropriate legal remedy for the initial illegal arrest is suppression of the fruits of the illegality. *See Commonwealth v. Leet*, 401 Pa.Super. 490, 585 A.2d 1033 (1991); *Commonwealth v. Palm*, 315 Pa.Super. 377, 462 A.2d 243 (1983), *allocatur denied; Commonwealth v. Eshelman*, 236 Pa.Super. 223, 345 A.2d 286 (1975) (HOFFMAN, J., dissenting), *rev'd* 477 Pa. 93, 383 A.2d 838 (1978). *See generally*, Comment, *Arrest and Search Powers of Special Police in Pennsylvania*, 59 Temp.L.Q. 497 (1986). Having made this comment, I join wholeheartedly in the excellent majority Opinion.

---

1. The majority properly recognizes this distinction, as it summarily rejects appellant's argument that the court below should have quashed the information against him. *See* at 169 n. 1.