691 A.2d 934

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**John BRANDT, Appellee.**

Superior Court of Pennsylvania.

Argued Dec. 18, 1996.

Filed Feb. 27, 1997.

Reargument Denied May 2, 1997.

718

Scott A. Bradley, Assistant District Attorney, Pittsburgh, for Commonwealth, appellant.

Wendell G. Freeland, Pittsburgh, for appellee.

Before DEL SOLE, POPOVICH and HESTER, JJ.

POPOVICH, Judge.

The Commonwealth appeals the lower court's order dated May 17, 1996, suppressing the evidence seized by a Pittsburgh Housing Authority Police Officer following the warrantless arrest of appellee for violating the motor vehicle code and the drug laws. The lower court determined that the housing authority police officer did not have jurisdiction to arrest appellee, and, therefore, suppressed the evidence seized by the officer. On appeal, the Commonwealth argues that the housing authority police officer was empowered to arrest appellee, or that, in the alternative, if the officer lacked the authority to arrest appellee, suppression of the evidence was an improper remedy.[1] We affirm.

---

[1]. In its statement of jurisdiction, the Commonwealth certifies that the suppression order substantially handicaps or effectively terminates its prosecution of the case. This permits appellate review of the suppression order. *Commonwealth v. Dugger*, 506 Pa. 537, 486 A.2d 382 (1985).

■ When reviewing the Commonwealth's appeal from the decision of the suppression court, "we must consider only the evidence of the . . . appellee's witnesses and so much of the evidence for the prosecution as read in the context of the record as a whole remains uncontradicted." *Commonwealth v. Baer,* 439 Pa.Super. 437, 654 A.2d 1058, 1058 (1995) (citation omitted). "If the evidence supports the factual findings of the trial court, we are bound by such findings, and we may reverse only if the legal conclusions drawn therefrom are in error." *Commonwealth v. Espada,* 364 Pa.Super. 604, 528 A.2d 968, 969 (1987) (citation omitted). After a careful review of the record, we are satisfied that the lower court's factual findings are supported by the record. However, we are compelled to note several important omissions from the lower court's summary of the salient facts.

On July 26, 1995, at approximately 11:30 p.m., Keith Miles, a Pittsburgh Housing Authority Police Officer, was in uniform and in a marked police car traveling from his routine patrol area to a nearby location to retrieve an official vehicle. Officer Miles was accompanied by his partner, Officer Larkin. The housing authority police officers reached the intersection of Kirkpatrick Street and Fifth Avenue, approximately two blocks from the housing authority's property, when they observed appellee, who was sitting in his vehicle at a red traffic signal. The officers observed that appellee failed to move his vehicle after the traffic light turned green. Drivers stopped behind appellee's vehicle began blowing their vehicles' horns. Appellee still did not move his vehicle. After the traffic signal had again turned red, the officers noticed that appellee was moving his head in an erratic manner. It appeared to Officer Miles that appellee was experiencing a seizure or some other type of medical emergency. The officer then activated the cruiser's lights, stopped alongside appellee's vehicle, exited the vehicle and approached appellee. Officer Miles observed that appellee's eyes were "glassed over," that his pupils were dilated and that he was continuing to jerk for his driver's license and registration. While appellee attempted to locate his license and registration, Officer Miles observed three

syringes, a bottle cap, and a clear plastic baggie on the front passenger's seat. After appellee was unable to locate his license and registration, Officer Miles instructed him to exit his vehicle so that the officer could conduct field sobriety tests. As appellee exited his vehicle, he stumbled and staggered, nearly falling to the ground. Officer Miles then decided that it was unnecessary to conduct any field sobriety tests, and placed appellee under arrest. Officer Miles seized the syringes, bottle cap, and baggie, and then transported appellee to a local hospital for testing. Appellee's blood test came back positive for morphine, and the bottle cap contained heroin.

Appellee was charged with driving while under the influence of a controlled substance, possession of a controlled substance, and possession of drug paraphernalia. He filed a motion to suppress the evidence seized by the housing authority police officer, which was granted by the lower court. This timely appeal by the Commonwealth followed.

The issue on appeal is whether the actions of Officer Miles were in compliance with the statutory law defining the powers and duties of housing authority police officers, as set forth at 35 P.S. § 1550. The relevant portion of this statute provides the following:

> § 1550 Powers of an Authority
>
> An Authority shall constitute a public body, corporate and politic, exercising public powers of the Commonwealth as an agency thereof, which powers shall include all powers necessary or appropriate to carry out and effectuate the purpose and provisions of this act, including the following powers, in addition to others herein granted:
>
> \* \* \* \* \* \*
>
> (ee) In a city of the second class, to appoint police officers who shall have the same rights, powers and duties as other peace officers in the Commonwealth *with respect to the property and enforcing order on and adjacent to the grounds and buildings of the Authority:* Provided, That said police officers complete the same course of instruction as is required for municipal police officers by the act of June

18, 1974 (P.L. 359, No. 120), referred to as the Municipal Police Education and Training Law. (emphasis added).

■ We agree with the lower court that Officer Miles' conduct was in violation of Section 1550(ee). The clear, unambiguous language of Section 1550(ee) limits the jurisdiction of housing authority police officers to the borders of the Authority's property and the adjoining municipal property. Here, the offense, the arrest of appellee, and the seizure of evidence occurred at a public intersection approximately two blocks from the Authority's property. Accordingly, we find that Officer Miles acted beyond his territorial limits of primary jurisdiction authorized by Section 1550(ee). *See Commonwealth v. Savage*, 403 Pa.Super. 446, 589 A.2d 696 (1991) (where the offense and arrest of appellee occurred off campus, campus police, who are generally limited to exercising their powers on campus, acted beyond their jurisdictional territory).

■ Having concluded that Officer Miles acted beyond his territorial limits, we must determine whether he was empowered to do so pursuant to 42 Pa.C.S.A. § 8951 *et seq.*, the Municipal Police Jurisdiction Act. The Act provides that under six specific circumstances, municipal police officers are permitted to act beyond their territorial limits of their primary jurisdiction. *Commonwealth v. O'Shea*, 523 Pa. 384, 567 A.2d 1023 (1989). *See also* 42 Pa.C.S.A. § 8953(a). Here, the Commonwealth argues that Officer Miles was a municipal police officer and that he was on official business at the time he viewed the offense, arrested appellee, and seized the evidence. Therefore, the Commonwealth argues that pursuant to 42 Pa.C.S.A. § 8953(a)(5), Officer Miles' extra-territorial actions were authorized.[2] We disagree.

**2.** Section 8953(a)(5) provides the following:

*(a) General rule*—Any duly employed municipal police officer who is within the Commonwealth, but beyond the territorial limits of his primary jurisdiction, shall have the power and authority to enforce the laws of this Commonwealth or otherwise perform those functions

■ The Act defines "municipal police officer" as "any natural person who is properly employed by a municipality, including a home rule municipality, as a regular full-time or part-time police officer." 42 Pa.C.S.A. § 8951. 35 P.S. § 1543(m) defines "municipality" as "[a]ny county, city, borough or township." 35 P.S. § 1543(a) defines "Authority" as "[a] public body and a body corporate and politic created and organized, in accordance with the provisions of this act, for the purpose, with the powers, and subject to the rest hereinafter set forth." Here, Officer Miles was not employed by a municipality. Rather, he was acting as a housing authority police officer employed by the Pittsburgh Housing Authority. From the plain language of the statute, it is clear that the Pittsburgh Housing Authority is not a county, city, borough or township. Accordingly, we find that Officer Miles was not a municipal police officer, and, therefore, his conduct cannot be examined under the Municipal Police Jurisdiction Act.[3] Rather, his conduct must be examined exclusively under 35 P.S. § 1550, which, as discussed previously, was violated in this

within the territorial limits of his primary jurisdiction in the following cases:

\* \* \* \* \* \*

(5) Where the officer is on official business and views an offense, or has probable cause to believe that an offense has been committed, and makes a reasonable effort to identify himself as a police officer and which offense is a felony, misdemeanor, breach of the peace or other act which presents an immediate, clear and present danger to persons or property.

3. The Commonwealth's citations to cases involving action by capitol police, decided under both 71 P.S.C. § 646 and 42 Pa.C.S.A. § 8953, are inapposite to this case, as the powers of capitol police and housing authority police are not similar. Rather, we find more persuasive appellee's argument that this case is similar to those cases dealing with the powers of campus and park police. *Compare Commonwealth v. Switzer*, 375 Pa.Super. 137, 543 A.2d 1216 (1988) (state capitol police are not limited in jurisdiction to borders of state property; Municipal Police Jurisdiction Act is applicable to capitol police) *with Savage, supra* (statutory language limits the territory of campus police; Municipal Police Jurisdiction Act is inapplicable to campus police) *and Commonwealth v. Roberts*, 356 Pa.Super. 309, 514 A.2d 626 (1986) (statutory language limits the territory of park police; Municipal Police Jurisdiction Act is inapplicable to campus police).

case.[4]

█ Finally, we find meritless the Commonwealth's argument that the exclusionary rule is inapplicable to this case. The Commonwealth argues that suppression is an improper remedy because Officer Miles' action did not constitute a fundamental, constitutional violation nor did the officer act in bad faith.[5] Commonwealth's Brief p. 24. We disagree.

4. We note that in *Commonwealth v. Bienstock*, 449 Pa.Super. 299, 673 A.2d 952 (1996), this Court examined the issue of whether officers are permitted to arrest suspects under the private citizen concept. In *Bienstock*, we found that an officer of the Pennsylvania State Police Bureau of Liquor Control Enforcement did not have statutory authority to stop the appellee. We also held that since the officer was on duty, in an official unmarked car, and he activated his siren to stop the appellee, the officer's conduct was sufficient indicia of official conduct to constitute state action, and, therefore, the officer did not act as a private citizen. Accordingly, we held that the officer's action did not constitute a permissible citizen's arrest.

In this case, there can be no doubt that Officer Miles was acting under the color of state law when he arrested appellee. Officer Miles was on duty, in uniform, in an official marked car, and he activated his siren when approaching appellee's vehicle. Clearly, the officer was acting in his official capacity and not as a private citizen. Therefore, his conduct did not constitute a permissible citizen's arrest. *See Commonwealth v. Price*, 406 Pa.Super. 166, 593 A.2d 1288 (1991) *aff'd*, 543 Pa. 403, 672 A.2d 280 (1996) (determining when an officer acts as an instrument of the state); *Bienstock, supra.*

5. Although the Commonwealth argued that Officer Miles had the authority to arrest appellee, it failed to address whether the evidence in this case was seized properly by Officer Miles. However, we find that it is necessary for us to discuss this issue briefly.

Case law establishes that under the plain view doctrine, evidence can be seized without a warrant when:

(1) the initial intrusion is lawful—the officer does not violate the Fourth Amendment in arriving at the place from which the evidence is lawfully viewed;

(2) the incriminating character of the object is immediately apparent; and

(3) the officer has a lawful right of access to the object.

*Commonwealth v. Wells*, 441 Pa.Super. 272, 657 A.2d 507, 509 (1995) (citation omitted). Here, the three syringes, bottle cap and baggie seized by Officer Miles were on the front seat of appellee's vehicle in "plain view," and were spotted by Officer Miles prior to the arrest of appellee. However, we find that the evidence was not in "plain view" until after Officer Miles had exercised his authority unlawfully. The record reveals that after observing appellee's vehicle at the red light, Officer Miles activated his cruiser's lights, approached appellee, re-

In *Commonwealth v. Price*, 406 Pa.Super. 166, 593 A.2d 1288 (1991), *aff'd*, 543 Pa. 403, 672 A.2d 280 (1996), our supreme court specifically held that application of the exclusionary rule was an appropriate remedy where the appellee was illegally arrested and evidence was illegally seized by a Federal Bureau of Investigation agent acting beyond his jurisdictional authority. The court found that because appellee was unlawfully arrested by an agent acting as "an instrument of the state," the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution were violated.[6] "The remedy of exclusion under such facts is not invoked as a means of punishing the state, but rather as a means of assuring that a defendant's constitutional rights are protected adequately when infringed upon by the use of unlawful state action." *Id.* 672 A.2d at 284. The court also held that in determining whether the exclusionary rule applies, the good or bad faith of an individual acting under the color of state law is irrelevant. *Id.*

In this case, suppression of the evidence was the proper remedy. Officer Miles, acting under the color of state action, acted beyond his jurisdictional authority when he arrested appellee and seized the evidence. As in *Price*, appellee would never have been arrested or the evidence seized had the officer complied with his statutory authority. Therefore, we find that the lower court properly suppressed the evidence in

quested appellee's driver's license and registration, and *then* spotted the items on the passenger's seat. Just as Officer Miles was acting outside of his jurisdiction in arresting appellee, so too was he acting outside of his jurisdiction in seizing appellee prior to discovering the evidence. *See Commonwealth v. Lewis,* 535 Pa. 501, 636 A.2d 619 (1994) (when a reasonable person is not free to leave, he has been "seized"). Since he was unlawfully in a place from which the evidence was viewed and he had no lawful right of access to the evidence, the plain view doctrine is inapplicable.

**6.** The Fourth Amendment and Article I, Section 8 of the Pennsylvania Constitution protect against unreasonable searches and seizures effectuated under the color of state action. *Price, supra.*

this case.[7]

Affirmed.

7. We note that this Court has also sanctioned suppression under fact patterns similar to the one in this case. *See Bienstock, supra* (evidence suppressed where an officer of the Pennsylvania State Police Bureau of Liquor Control Enforcement acted beyond his jurisdictional authority); *Roberts, supra* (evidence suppressed where a park police officer acted beyond his jurisdictional authority); *Savage, supra* (evidence suppressed where a campus police officer acted beyond his jurisdictional authority).