J-A16002-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MOLLY HLUBIN, | |
| Appellant | No. 951 WDA 2015 |

Appeal from the Judgment of Sentence May 21, 2015
In the Court of Common Pleas of Allegheny  County
Criminal Division at No(s): CP-02-CR-0003205-2014

BEFORE:  SHOGAN, OLSON, and STRASSBURGER,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED OCTOBER 6, 2016**

Appellant, Molly Hlubin, appeals from the judgment of sentence entered following her conviction of two counts of driving under the influence of alcohol.  We affirm.

The trial court summarized the factual and procedural history of this case as follows:

> The facts presented to this [c]ourt and found to be credible are as follows:  on September 29, 2013, police officers from the West Hills DUI Task Force conducted a sobriety checkpoint on Steubenville Pike in Robinson Township, Pennsylvania.  The West Hills DUI Task Force is comprised of municipal police officers from fifteen (15) jurisdictions in the western portion of Allegheny County, Pennsylvania, including Robinson Township and Moon Township.  After the conclusion of the Suppression Hearing, the Commonwealth filed a Motion to Reopen the Record and Admit

_____

[*]  Retired Senior Judge assigned to the Superior Court.

New Evidence so that they could introduce, as Exhibit 4, Robinson Township's Resolution 14-2003 that authorized their participation in the West Hills DUI Task Force. This [c]ourt granted that request on May 21, 2015.

At the Suppression Hearing, the Commonwealth presented testimony of Sergeant Douglas Ogden, who is a Patrol Sergeant with the Moon Township Police Department. Sergeant Ogden has been with the Moon Township Police Department since 1996 and has been in law enforcement since 1989. Sergeant Ogden is the Program Coordinator and Project Manager for the West Hills DUI Task Force. In addition to administrative tasks such as applying for grants and managing statistics, Sergeant Ogden organizes the checkpoints and road patrols and conducts training for the officers involved in checkpoints and DUI enforcement and detection. Sergeant Ogden testified that his statistical analysis showed that most of the DUI arrests and crashes in Robinson Township occurred at Steubenville Pike. The West Hills DUI Task Force has policies in place to identify target locations for DUI checkpoints, which [were] admitted into evidence as Commonwealth's Exhibit 1. The West Hills DUI Task Force Policy and Procedural Guidelines require that the grant coordinator, or his designee, be present at all DUI checkpoints.

Sergeant Ogden testified that he requested a DUI checkpoint from September 28, 2013 at 11[:00] p.m. through September 29, 2013 at 4:00 a.m. to coordinate with the ending time of a concert at the Star Amphitheater because historically Robinson Township has difficulty with drunk drivers following concerts at that venue. On September 23, 2013, Robinson Township Police authorized this DUI checkpoint. Thereafter, Sergeant Ogden sent out the required press releases and the request for manpower. At the time the checkpoint begins, Sergeant Ogden and the officer in charge assign officers from each municipality specific tasks with the officers from the home agency who are qualified to administer DUI Field Sobriety Tests being assigned to the testing area. Generally, Sergeant Ogden, as grant coordinator, is in the area of the DUI trailer and testing area assisting officers there, however, he also can fill in where needed when manpower is depleted.

Sergeant Ogden was present at the September 28, 2013 DUI checkpoint on Steubenville Pike in Robinson Township. At 12:25 a.m., he was filling in on the road because the line had

become depleted of manpower. At this time, he came into contact with [Appellant], who was the driver of a vehicle. After introducing himself, Sergeant Ogden asked for her driver's license, registration, and proof of insurance. [Appellant] initially handed him her Target credit card. While [Appellant] was obtaining her documentation, Sergeant Ogden noticed an odor [of] alcoholic beverages coming from the vehicle and that [Appellant] had slurred speech. In addition, [Appellant] admitted that she had a shot and a beer. Sergeant Ogden then escorted her to the testing area, explained the testing procedure, and handed her over to Officer Sicilia of the Robinson Township Police Department. Thereafter, Sergeant Ogden had no direct contact with [Appellant].

Officer Dominic Sicilia, a police officer with Robinson Township, testified that he was working the testing area in the DUI checkpoint on Steubenville Pike in Robinson Township on September 28-29, 2013. He further testified that he came into contact with [Appellant] while he was working the checkpoint. He testified that he explained that she was going to be asked to perform three field sobriety tests: the HGN test, the walk-and-turn test, and the one-legged stand test. [Appellant] was given instructions on how to perform each test prior to administration of the test, and understood the directions. With regard to the HGN test, Officer Sicilia was looking for six (6) clues, and observed all six (6) clues. Further, [Appellant] exhibited two (2) out of eight (8) clues for the walk-and-turn test. [Appellant] exhibited one (1) out of four (4) clues for the one-legged stand test. Based upon his experience with intoxicated persons, his training as a police officer, the information provided by Sergeant Ogden, and his interaction with [Appellant], Officer Sicilia formed an opinion that [Appellant] was incapable of safely operating a motor vehicle. Thereafter, [Appellant] consented to a blood draw, and was found to have a blood alcohol content of .152%.

Trial Court Opinion, 1/5/16, at 2-5 (internal citations omitted).

By way of Criminal Complaint, [Appellant] was charged with two counts of Driving Under the Influence of Alcohol in violation of 75 Pa.C.S.A. §3802(b) (having a BAC of .10% to less than .16%) and 75 Pa.C.S.A. §3802(a)(1) (general impairment) for [the] incident that occurred on September 29, 2013.

On March 13, 2015, this [c]ourt heard [Appellant's] Motion to Suppress, which was denied on May 21, 2015. The matter proceeded to a non-jury trial on May 21, 2015 wherein the Commonwealth and [Appellant] stipulated to the admission of the suppression hearing testimony of Officer Sicilia and Sergeant Ogden as well as the crime lab results of [Appellant's] blood test. Thereafter, [Appellant] was found guilty of both counts of DUI. [Appellant] waived her right to a pre-sentence report and the matter proceeded to sentencing. [Appellant] was sentenced to thirty (30) days of Restrictive Intermediate Punishment, six (6) months of non-reporting probation, and the mandatory fines and stipulations.

On June 16, 2015, [Appellant] filed [a] Notice of Appeal. Via Order of Court dated June 22, 2015, Counsel for [Appellant] was directed to file a Concise Statement of Matters Complained of [on] Appeal. [Appellant] filed her Concise Statement on July 1, 2015[.]

Trial Court Opinion, 1/5/16, at 1-2. The trial court filed an opinion pursuant

to Pa.R.A.P. 1925(a).

On appeal, Appellant presents the following issues for our review:

A. Whether or not the West Hills DUI Task Force, comprised of police officers from fifteen (15) different municipalities, was lawfully created and possessed the requisite jurisdiction pursuant to the Intergovernmental Cooperation Act, 53 Pa.C.S.A. § 2303, et. seq., to conduct a DUI sobriety checkpoint on Steubenville Pike in Robinson Township, PA, which led to the Appellant's stop, detention and arrest?

B. Whether or not Sergeant Ogden, the Moon Township, PA, police officer that organized and oversaw the West Hills DUI Task Force DUI sobriety checkpoint located on Steubenville Pike in Robinson Township, PA, had jurisdiction pursuant to the Municipal Police Jurisdiction Act, 42 Pa.C.S.A. § 8953, or the Intergovernmental Cooperation Act, 53 Pa.C.S.A. § 2303, et. seq., to stop and detain the Appellant for an offense that occurred in Robinson Township, PA?

- 4 -

      C.     Whether or not Officer Sicilia had sufficient probable cause to arrest the Appellant for the offense of DUI and to request a chemical test?

Appellant's Brief at 4.

All of Appellant's issues relate to the trial court's denial of her suppression motion. Appellant's Brief at 14. Our standard of review when the trial court denies a suppression motion is as follows:

> When considering the denial of a suppression motion, this Court's review is limited to determining whether the court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed in the suppression court, we consider only the Commonwealth's evidence and so much of the appellant's evidence as is uncontradicted when read in the context of the record as a whole. Where the record supports the suppression court's factual findings, we are bound by those facts and may reverse only if the legal conclusions drawn from them are erroneous.

*Commonwealth v. West*, 937 A.2d 516, 527 (Pa. Super. 2007) (internal citations omitted).

In her first issue, Appellant argues that the trial court erred when it ruled that the West Hills DUI Task Force ("Task Force") was lawfully created and had jurisdiction to stop, detain, and arrest Appellant at the sobriety checkpoint in Robinson Township.[1] Appellant's Brief at 15. Appellant contends that Pennsylvania law does not allow municipal officers from

_____

[1] We, like the trial court, interpret this issue as solely a challenge to the legitimacy of the Task Force and not to the operation of the checkpoint itself. *See* Trial Court Opinion, 1/5/16, at 5.

multiple jurisdictions to loosely band together to form a task force and cross jurisdictional lines for the purpose of conducting a DUI sobriety checkpoint. *Id.* Appellant maintains that the Intergovernmental Cooperation Act, 53 Pa.C.S. 2302, *et. seq*. governs agreements and cooperation between municipalities. *Id.* The Act permits municipalities to jointly cooperate; however, it requires a specific statutory process that must be followed. *Id.* Appellant asserts that process was not followed in this case. *Id.* Appellant avers that "[t]here was no evidence presented of any signed, or even written, joint agreement between the participating municipalities that was adopted by ordinance; therefore, the West Hill DUI Task Force did not legally exist or have jurisdiction to enforce the laws of the Commonwealth on behalf of the municipalities." *Id.* at 21. Accordingly, Appellant posits that the Task Force lacked jurisdictional authority to conduct the DUI checkpoint at issue herein. *Id.* at 20.[2]

The Intergovernmental Cooperation Act, ("ICA"), 53 Pa.C.S. §§ 2301-2317, applies to all local governments. 53 Pa.C.S. § 2301. "Local governments" are defined as: "A county, city of the second class, second

_____

[2] We note that the Commonwealth fails to present any argument on this issue other than to state that: "It is the position of the Commonwealth that exactly what type of entity West Hills DUI Task Force is and how it came into creation is irrelevant as the Municipal Police Jurisdiction Act (MPJA), 42 Pa.C.S.A. § 8951, *et seq.* authorizes police officers to act outside of their primary jurisdiction." Commonwealth's Brief at 13. The application of the MPJA to this matter is discussed subsequently in addressing Appellant's second issue.

class A and third class, borough, incorporated town, township, school district or any other similar general purpose unit of government created by the General Assembly after July 12, 1972." 53 Pa.C.S. § 2302. The additional provisions of the Act relevant to the pending issue provide the following:

### § 2303. Intergovernmental cooperation authorized

**(a) General rule.**--Two or more local governments in this Commonwealth may jointly cooperate, or any local government may jointly cooperate with any similar entities located in any other state, in the exercise or in the performance of their respective governmental functions, powers or responsibilities.

**(b) Joint agreements.**--For the purpose of carrying the provisions of this subchapter into effect, the local governments or other entities so cooperating shall enter into any joint agreements as may be deemed appropriate for those purposes.

53 Pa.C.S. § 2303.

### § 2304. Intergovernmental cooperation

A municipality by act of its governing body may, or upon being required by initiative and referendum in the area affected shall, cooperate or agree in the exercise of any function, power or responsibility with or delegate or transfer any function, power or responsibility to one or more other local governments, the Federal Government or any other state or its government.

53 Pa.C.S. § 2304.

### § 2305. Ordinance

A local government may enter into intergovernmental cooperation with or delegate any functions, powers or responsibilities to another governmental unit or local government **upon the passage of an ordinance** by its governing body. If mandated by initiative and referendum in the area affected, the local government shall adopt such an ordinance.

- 7 -

53 Pa.C.S. § 2305 (emphasis added).

### § 2315. Effect of joint cooperation agreements

Any joint cooperation agreement shall be deemed in force as to any local government when the agreement has been **adopted by ordinance by all cooperating local governments**. After adoption by all cooperating local governments, the agreement shall be binding upon the local government, and its covenants may be enforced by appropriate remedy by any one or more of the local governments against any other local government which is a party to the agreement.

53 Pa.C.S. § 2315 (emphasis added).

Thus, intergovernmental cooperation agreements are effected upon each municipality's adoption of an ordinance; failure to do so renders an intergovernmental agreement void. *Stein v. Com., Dept. of Transp., Bureau of Licensing*, 857 A.2d 719, 724 (Pa. Cmwlth. 2004);[3] *see also Summit Tp. Indus. and Economic Development Authority v. County of Erie*, 980 A.2d 191, 209-210 (Pa. Cmwlth. 2009) (county could not enter into intergovernmental cooperative agreements with other municipalities and distribute revenue to such municipalities without the county and municipalities first passing ordinances adopting the agreements).

_____

[3] "Although decisions of the Commonwealth Court are not binding on this Court, we may rely on them if we are persuaded by their reasoning." *NASDAQ OMX PHLX, Inc. v. PennMont Secs.*, 52 A.3d 296, 308 n.7 (Pa. Super. 2012); *see also Commonwealth v. Rodriguez*, 81 A.3d 103, 107 n.7 (Pa. Super. 2013) ("Although the decisions of the Commonwealth Court are not binding upon this Court, they may serve as persuasive authority.").

The Commonwealth presented five exhibits. We note that Commonwealth Exhibits 1, 2, 3 and 5 are not included in the certified record.[4]

> The law of Pennsylvania is well settled that matters which are not of record cannot be considered on appeal . . . any document which is not part of the officially certified record is deemed non-existent—a deficiency which cannot be remedied merely by including copies of the missing documents in a brief or in the reproduced record.

*Commonwealth v. Preston*, 904 A.2d 1, 6 (Pa. Super. 2006). Additionally, the appellant has the responsibility "to make sure that the record forwarded to an appellate court contains those documents necessary to allow a complete and judicious assessment of the issues raised on appeal." *Commonwealth v. Walker*, 878 A.2d 887, 888 (Pa. Super. 2005).

Nevertheless, Appellant's failure to include these exhibits in the certified record does not hamper our review. Thorough descriptions of the documents identified as the respective exhibits are provided in the suppression hearing and nonjury stipulated trial transcripts. In addition, the exhibits are included in the reproduced record and match the detailed descriptions provided in the transcripts. Having an understanding of these exhibits, we note that none establishes that the Task Force was lawfully created or had authority to conduct the sobriety checkpoint at issue.

---

[4] Commonwealth Exhibit 4 is included in the certified record.

Additionally, none of the five exhibits relied upon by the Commonwealth proves that the Task Force was created by a joint cooperation agreement. Moreover, there was no evidence presented that participating member municipalities had adopted ordinances for purposes of joining and creating the Task Force.

Specifically, Commonwealth Exhibit 1 was the Task Force policy and procedural guidelines for conducting sobriety checkpoints. These policies and procedures simply outline criteria for establishing a sobriety checkpoint. Despite listing the fifteen municipalities that allegedly participated in the Task Force, they do not constitute a joint cooperation agreement nor do they reflect that the Task Force was lawfully created. Commonwealth Exhibit 2 is a blank form used by the Task Force to obtain authorization from the host municipality for purposes of conducting a sobriety checkpoint. Commonwealth Exhibit 3 is a sobriety checkpoint authorization form executed by the Chief of Robinson Township police Department authorizing the sobriety checkpoint held on September 28-29, 2013.

Commonwealth Exhibit 4 is a resolution from Robinson Township. As noted, this Exhibit is included in the certified record. This document, Resolution 14-2003, provides as follows:

> BE IT RESOLVED, by the authority of the Board of Commissioners of the Township of Robinson, Allegheny County, and it is hereby resolved by authority of the same, that the Township Manager of said Municipality, authority be authorized and directed to sign the attached agreement on its behalf.

Further be resolved that the Township of Robinson shall participate with the West Hills DUI Task Force for the purpose of promoting safer highways in the Commonwealth by educating and enforcing driving under the influence of alcohol or drugs statutes.

I Timothy Little, Township Manager of the Township of Robinson do hereby certify that the foregoing is a true and correct copy of the resolution adopted at the regular meeting of the Board of Commissioners held the 14 of July, 2003.

Commonwealth's Exhibit 4; attachment to the Commonwealth's motion to reopen the record and admit new evidence.

As outlined above, pursuant to 53 Pa.C.S. §§ 2305 and 2315, a joint cooperation agreement shall be deemed in force when the agreement has been adopted by ordinance. Commonwealth Exhibit 4 is a resolution, not an ordinance.[5] Accordingly, the exhibit fails to establish that Robinson Township lawfully entered into the joint cooperation agreement that allegedly created the Task Force.[6] Moreover, the resolution did not serve to

_____

[5] The Commonwealth Court explained the difference between a resolution and an ordinance in *Middletown Tp. v. County of Delaware Uniform Const. Code Bd. of Appeal*, 42 A.3d 1196 (Pa. Cmwlth. 2012). "Passing an ordinance is accompanied by particular formalities, including notice to residents to provide them the opportunity to voice their concerns with the municipality's proposed actions." *Id.* at 1201. "As a general rule, a resolution does not have the effect of a law or an ordinance. It is usually viewed merely as 'a formal expression of the opinion or will of an official body or a public assembly, adopted by vote.'" *Id.* at 1202 n.8.

[6] In *Middletown Tp.*, the Commonwealth Court addressed an issue similar to that presented herein. In that case, the Court determined that the township had not lawfully entered into a joint cooperation agreement under
*(Footnote Continued Next Page)*

establish that the Task Force was a lawfully created joint cooperation agreement pursuant to 53 Pa.C.S. §§ 2305, 2315.

Finally, Commonwealth Exhibit 5 was the lab results that established Appellant's blood alcohol content. Thus, this exhibit was not relevant to the determination of whether the Task Force was lawfully created and its authority to conduct the sobriety checkpoint at issue.

The record is devoid of any evidence that the Task Force was lawfully created. Without establishing the lawful creation of the Task Force, the Commonwealth has failed to establish that it had the authority to carry out the sobriety checkpoint at issue. Therefore, we cannot agree with the trial court's conclusion that the DUI checkpoint was a valid exercise of the joint governmental cooperation agreement.

Consequently, we consider Appellant's second issue in the context of determining whether officers had another lawful basis upon which to stop and arrest Appellant. In her second claim, Appellant argues that Moon Township Police Sergeant Ogden did not have jurisdiction to stop and detain Appellant for a DUI offense in Robinson Township. Appellant's Brief at 27. Appellant contends that Sergeant Ogden did not have authority to detain Appellant outside of his primary jurisdiction, and "none of the MPJA's enumerated ways in which an officer may lawfully exercise his authority

_(Footnote Continued)_ ────────────

the ICA because it had passed a resolution, as opposed to an ordinance, in an attempt to join the agreement. **Id.** at 1201-1202.

outside of his primary jurisdiction exist in the present case." *Id.* at 27-28.

Thus, Appellant contends, the trial court erred when it ruled that the DUI

sobriety checkpoint at issue complied with the MPJA. *Id.* at 31.

The MPJA provides police with the authority to act as police officers

outside their jurisdiction in limited circumstances. *Commonwealth v.*

*Lehman*, 870 A.2d 818, 820 (Pa. 2005). "The courts of this Commonwealth

have consistently held that in applying the MPJA in a manner that

effectuates its purpose, we should construe its provisions liberally."

*Commonwealth v. Peters*, 915 A.2d 1213, 1218 (Pa. Super. 2007).

> This Act is not among those statutes which must be strictly construed under the rules of statutory construction, but instead is subject to liberal construction to effectuate its objectives and to promote justice. *Commonwealth v. McHugh*, 413 Pa.Super. 572, 605 A.2d 1265 (1992). Specifically, one of the principle objectives to be obtained by this Act is to promote public safety while maintaining jurisdictional police lines. *Commonwealth v. Merchant*, 528 Pa. 161, 595 A.2d 1135 (1991). However, as our Supreme Court stated in Merchant, "the General Assembly recognized that constructing impenetrable jurisdictional walls benefited only the criminals hidden in their shadows." *Id.* at 169, 595 A.2d at 1139.

*Id.* at 1217-1218 (internal citations omitted).

The pertinent exception of the MPJA relevant to the instant case

states:

> **§ 8953. Statewide municipal police jurisdiction**
>
> **(a) General rule.**--Any duly employed municipal police officer who is within this Commonwealth, but beyond the territorial limits of his primary jurisdiction, shall have the power and authority to enforce the laws of this Commonwealth or otherwise perform the functions of that office as if enforcing those laws or

performing those functions within the territorial limits of his primary jurisdiction in the following cases:

* * *

> (3) Where the officer has been requested to aid or assist any local, State or Federal law enforcement officer or park police officer or otherwise has probable cause to believe that the other officer is in need of aid or assistance.

42 Pa.C.S. § 8953(a)(3).

The trial court concluded that Sergeant Ogden had jurisdiction to stop Appellant at the checkpoint in Robinson Township pursuant to section 8953(a)(3). Trial Court Opinion, 1/5/16, at 6. The trial court reasoned that Sergeant Ogden was at the sobriety checkpoint pursuant to the request for assistance from the Chief of the Robinson Township Police Department. *Id.* at 7. We agree. The record reflects that Sergeant Ogden had authority to conduct the stop of Appellant based on Robinson Township Police Chief's request for assistance for purposes of conducting the sobriety checkpoint.

Furthermore, we recognize that even if there had been a technical violation of the MPJA, suppression would not be warranted.

> Two conflicting positions have arisen in this Court on the question as to whether a violation of the MPJA entitles an aggrieved party to suppression under the exclusionary rule. In **Commonwealth v. Bradley**, 724 A.2d 351 (Pa.Super.1999) (*en banc*), this Court noted the exclusionary rule applies to any evidence gathered subsequent to an MPJA violation "even if the officer acts in good faith or the police officer's actions would have been lawful if performed within the proper jurisdictional limits." **Id.** at 354, *citing* **Commonwealth v. Brandt**, 456 Pa.Super. 717, 691 A.2d 934, 939 (1997), *appeal denied* 549 Pa. 695, 700 A.2d 437 (1997).

- 14 -

In **Commonwealth v. Chernosky**, 874 A.2d 123 (Pa.Super.2005) (*en banc*), *appeal denied* 588 Pa. 747, 902 A.2d 1238 (2006), this Court implicitly rejected the absolutist approach espoused in **Bradley** in favor of the case-by-case approach approved of by our Supreme Court in **Commonwealth v. O'Shea**, 523 Pa. 384, 567 A.2d 1023 (1990). The factors to be considered in applying this case-by-case approach consist of "all the circumstances of the case including the intrusiveness of the police conduct, the extent of deviation from the letter and spirit of the [MPJA], and the prejudice to the accused." **Chernosky**, **supra** at 130, *quoting* **O'Shea**, **supra** at 1030. The **Chernosky** Court further noted that the spirit, or purpose of, the MPJA "is to proscribe investigatory, extraterritorial forays used to acquire additional evidence where probable cause does not yet exist." **Id.** at 130, *citing* **Commonwealth v. Laird**, 797 A.2d 995, 999 (Pa.Super.2002).

**Chernosky** unquestionably sets forth the proper standard this Court is to employ in determining whether the exclusionary rule should act to suppress evidence obtained pursuant to an MPJA violation. **Chernosky** relies on an approach approved by our Supreme Court, is more recent than the decision rendered in **Bradley**, and sets forth a standard which allows this Commonwealth's courts to tailor a remedy in situations where police intentionally have overstepped their boundaries while still affording our courts the flexibility to deny suppression when police have acted to uphold the rule of law in good faith but are in technical violation of the MPJA. **See also Commonwealth v. Peters**, 915 A.2d 1213, 1222 n. 2. (Pa.Super.2007), *appeal granted* [938 A.2d 988].

**Commonwealth v. Henry**, 943 A.2d 967, 972-973 (Pa. Super. 2008).

Here, Sergeant Ogden acted in good faith at the sobriety checkpoint

he believed to be lawfully conducted.[7] Thus, even if Sergeant Ogden were in

_____

[7] We do not conclude by implication that the sobriety checkpoint was unlawfully conducted. Rather, as explained in our discussion of Appellant's first issue, we concluded that the Commonwealth failed to establish that the
*(Footnote Continued Next Page)*

technical violation of the MPJA, when viewed in light of all the circumstances, such technical violation would not result in suppression. ***See Henry***, 943 A.2d at 972 (where police officer was in technical violation of the MPJA, but the violation was unintentional, this Court determined that when viewed in light of all the circumstances the violation did not warrant the application of the exclusionary rule and suppression). Accordingly, we conclude that the trial court did not err in refusing to suppress the evidence resulting from the stop, detention, and arrest of Appellant.

In her third issue, Appellant argues that Officer Sicilia did not have probable cause to arrest Appellant or to request a chemical test from Appellant. Appellant's Brief at 32. Appellant asserts that Officer Sicilia's observations of Appellant and testimony regarding the same were not sufficient to establish probable cause that Appellant had been driving under the influence. ***Id.*** at 24-40.

The Pennsylvania Supreme Court has explained the following with regard to sobriety checkpoints:

> Although the stopping of a motor vehicle at a sobriety checkpoint constitutes a seizure for constitutional purposes, such checkpoint stops are not *per se* unreasonable, and hence are not *per se*

_(Footnote Continued)_ ───────────────

Task Force was properly created pursuant to the Intergovernmental Cooperation Act and that the sobriety checkpoint was lawfully conducted on that basis. Here, our reference to the lawfulness of the sobriety checkpoint is solely for purposes of addressing Sergeant Ogden's intent in stopping Appellant during the checkpoint and his belief that the sobriety checkpoint was lawfully conducted.

unconstitutional under either the Fourth Amendment to the United States Constitution or Article I, Section 8 of the Pennsylvania Constitution. . . . [T]he United States Supreme Court concluded that sobriety checkpoints do not offend the Fourth Amendment because they are a reasonable means of advancing a vital public interest, involving only a modest intrusion on the privacy and liberty of motorists. Similarly, we have held that systematic, non-discriminatory, non-arbitrary checkpoints do not offend the Pennsylvania Constitution.

*Commonwealth v. Worthy*, 957 A.2d 720, 724 (Pa. 2008) (internal citations and footnote omitted).

Moreover, this Court has explained the following with regard to a warrantless arrest:

Probable cause to arrest exists when the facts and circumstances within the police officer's knowledge and of which the officer has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested. Probable cause justifying a warrantless arrest is determined by the 'totality of the circumstances.' [P]robable cause does not involve certainties, but rather the factual and practical considerations of everyday life on which reasonable and prudent men act. It is only the probability and not a *prima facie* showing of criminal activity that is a standard of probable cause.

*Commonwealth v. Dommel*, 885 A.2d 998, 1002 (Pa. Super. 2005) (internal citations and quotations omitted).

The trial court provided the following explanation in addressing this issue:

Officer Sicilia credibly testified that [Appellant] smelled of alcohol, exhibited bloodshot and glassy eyes, and did not successfully complete the field sobriety tests. In addition to his observations, Sergeant Ogden had advised [Officer Sicilia] that [Appellant] admitted to consuming a "shot and a beer" and had provided her Target credit card instead of her driver's license.

Based upon his experience and observations, Officer Sicilia concluded that [Appellant] was incapable of safely operating her vehicle. As such, this [c]ourt found that Officer Sicilia had probable cause to arrest [Appellant] for DUI.

Trial Court Opinion, 1/5/16, at 7-8.

Although Appellant challenges the substance and reliability of Officer Sicilia's testimony in establishing probable cause, the trial court found his testimony to be credible. *See Commonwealth v. Gallagher*, 896 A.2d 583, 585 (Pa. Super. 2006) ("It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony."). Additionally, Sergeant Ogden's testimony regarding Appellant's behavior supported Officer Sicilia's determination. Under the totality of the circumstances, therefore, an officer exercising reasonable caution would have had probable cause to believe that Appellant had been driving under the influence of drugs or alcohol. Accordingly, we conclude that the trial court did not err in determining that Officer Sicilia had probable cause to arrest Appellant for DUI. *See Commonwealth v. Salter*, 121 A.3d 987, 995 (Pa. Super. 2015) (probable cause for DUI arrest existed with an odor of alcohol, glassy eyes, appellee's admission that she had two glasses of wine, and poor performance on field sobriety tests.).[8]

_____

[8] Despite raising it in her brief, Appellant failed to raise any challenge to Officer Sicilia's request for a chemical test in her Pa.R.A.P. 1925(b) statement. Therefore, this issue is waived. *See Commonwealth v. Dowling*, 883 A.2d 570, 578 (Pa. 2005) (citing *Commonwealth v. Lord*,
*(Footnote Continued Next Page)*

Judgment of sentence affirmed.

Judge Olson joins the Memorandum.

Judge Strassburger files a Dissenting Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/6/2016

---

*(Footnote Continued)* ─────────────────

719 A.2d 306, 309 (Pa. 1998)) (The failure to raise an issue in an ordered Rule 1925(b) statement results in waiver of that issue on appeal.).